626 F.2d 333
 23 Fair Empl.Prac.Cas. 732,
23 Empl. Prac. Dec. P 31,165
Mary SMOUSE, on behalf of herself and all persons similarly
situated and Local 623, International Union of
Electrical, Radio and Machine Workers,
AFL-CIO, Appellants,
v.
GENERAL ELECTRIC COMPANY.
 No. 79-2141.
 United States Court of Appeals,
Third Circuit.
 Argued May 22, 1980.
Decided Aug. 5, 1980.
 
 Winn Newman, Carole Wilson, Washington, D. C., Michael B. Trister (argued), Ann H. Franke, Sobol & Trister, Washington, D. C., Louis B. Kushner, Steven H. Jordan, Rothman, Gordon, Foreman & Groudine, Pittsburgh, Pa. for appellants.
 Robert S. Garrett (argued), Gerald J. Hutton, Egler & Reinstadtler, Pittsburgh, Pa., for appellee.
 Leroy D. Clark, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Lutz Alexander Prager, Paul Mirengoff (argued), Attys., Equal Employment Opportunity Commission, amicus curiae, Washington, D. C.
 Robert S. Mirin, Gen. Counsel, Marion W. Cowperthwait (argued), Asst. Gen. Counsel Pennsylvania Human Relations Commission, amicus curiae, Philadelphia, Pa.
 Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM.
 
 
 1
 Mary Smouse (the plaintiff) and Local 623, International Union of Electrical, Radio & Machine Workers (Local 623) appeal from an order of the district court granting summary judgment in favor of General Electric Co. (the defendant), the plaintiff's employer, on the ground that this Title VII action was barred by res judicata as a result of state administrative proceedings.
 
 I.
 
 2
 The plaintiff was employed by the defendant at its Coil Manufacturing Department in West Mifflin, Pennsylvania. The plaintiff worked in the division that made armature and stator coil. Local 623 is the collective bargaining representative of the employees in that division.
 
 
 3
 During 1970 the defendant decided to transfer its armature and stator coil works to a plant in Ohio. When the phaseout of operations at the West Mifflin plant took place in April 1971, the defendant allegedly did not treat men and women similarly with respect to transfer to other full time positions.[1] The plaintiff was one of the women transferred to a part-time position during the phaseout.
 
 
 4
 In September 1971, three female employees from the Coil Department filed a complaint with the Pennsylvania Human Relations Commission (PHRC) challenging the phaseout on the ground of sex discrimination in violation of § 5(a) of the Pennsylvania Human Relations Act, Pa.Stat.Ann. tit. 43, § 955(a). Although the plaintiff was not a named party, the PHRC labelled the case as a class action on behalf of all female employees of the Coil Department.
 
 
 5
 A hearing panel of the PHRC held hearings on June 26-27 and August 1, 1973. On April 1, 1974, the PHRC found that the defendant had violated the state act. It ordered the defendant to offer to rehire or reassign all women laid off or reassigned in 1971, to provide training to those who accepted this offer, and to give backpay to the women in question.
 
 
 6
 There followed a series of appeals in which the Pennsylvania Commonwealth Court reversed the PHRC, General Electric Corp. v. Commonwealth, 18 Pa.Cmwlth. 316, 334 A.2d 817 (1975), and in which the Pennsylvania Supreme Court reversed the Commonwealth Court, General Electric Corp. v. Commonwealth, 469 Pa. 292, 365 A.2d 649 (1976). On October 28, 1977, the Commonwealth Court reinstated the PHRC's original order. However, as of the time this appeal was argued, no employee in the class has received backpay as required by the order.
 
 
 7
 Instead of following the course of her fellow employees, the plaintiff filed a timely complaint with the Equal Employment Opportunity Commission (EEOC). She alleged that the 1971 phaseout violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The EEOC issued a right to sue letter, and the plaintiff and Local 623 timely filed this action raising the Title VII claim.
 
 
 8
 The district court granted summary judgment to the defendant on the ground that the present action was barred by res judicata as a result of the PHRC order. This appeal followed.
 
 II.
 
 9
 Although no money judgment has yet been entered in the state proceedings, we will assume, without deciding, that all of the elements of res judicata, including finality, are present. Thus the sole question presented by this appeal is whether a decision by the PHRC that is subsequently affirmed by the Pennsylvania Supreme Court is res judicata so as to bar relitigation of the plaintiff's discrimination claim under Title VII in federal court. In Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court held that arbitration of an employee's discrimination grievance pursuant to a collective bargaining agreement will not bar a subsequent Title VII action in federal court. We believe that the reasoning of Alexander leads to the conclusion that state administrative proceedings like those of the PHRC do not bar federal relitigation of discrimination claims under Title VII.
 
 
 10
 First, in enacting Title VII Congress contemplated overlapping remedies for employment discrimination, and state procedures are included within this congressional intention. For example, Title VII states that the EEOC need not accord final weight to state proceedings. 42 U.S.C. § 2000e-5(b). The parties have cited to nothing in the language and legislative history, and we have discovered nothing, to indicate that Congress intended the courts to defer to state procedures while the EEOC need not. Indeed, in Alexander the question was whether a federal court, not the EEOC, must defer to arbitration. The Court relied on 42 U.S.C. § 2000e-5(b) as an indication that the courts need not defer to arbitration. See 415 U.S. at 48 & n.8, 94 S.Ct. at 1019. Thus the legislative intent to permit independent assertion of claims "under both Title VII and other applicable state and federal statutes," 415 U.S. at 48, 94 S.Ct. at 1019, means that state administrative proceedings do not act as res judicata as to Title VII claims.
 
 
 11
 Second, as we have noted in another context, procedures before the PHRC are not the same as those available to the plaintiff in federal court. For example, the PHRC's discovery rules are rather restricted, and there are certain limits on its ability to award damages that are not present under Title VII in a federal court. See Boykins v. Ambridge Area School District, 621 F.2d 75, 78-80 (3d Cir. 1980). In addition, it is unclear to what extent the Pennsylvania rules relating to class actions apply to PHRC proceedings. See Stevenson v. Pennsylvania Department of Revenue, 41 Pa.Cmwlth. 618, 399 A.2d 1180, 1182 (1979); Pa.Code, tit. 16, ch. 42.[2] Moreover, we note the amount of delay involved in this case. Although reinstatement of the PHRC's order occurred in 1977, approximately 6 years after the case was filed, plaintiff still has not received backpay.
 
 
 12
 If we would require the plaintiff to rely solely on the PHRC, these procedural differences might well frustrate the broad remedial purpose of Title VII. Such procedural differences were relevant in Alexander because the informal processes normally associated with arbitration were not appropriate for resolution of Title VII claims. 415 U.S. at 56-58, 94 S.Ct. at 1023-1024. Rather than foreclosing federal litigation of discrimination claims, we believe it preferable to permit the federal district court to tailor its relief in light of relief actually received in the state proceeding and to give the agency's conclusions appropriate but not necessarily controlling weight. See 415 U.S. at 51 n.14, 60 n.21, 94 S.Ct. at 1021 n.14, 1025 n.21. In this way, procedural differences between the two forums will not frustrate vindication of the goals of Title VII.
 
 
 13
 Virtually all the circuits that have considered the issue have agreed with our result. E. g., Gunther v. Iowa State Men's Reformatory, 612 F.2d 1079 (8th Cir.) (collecting cases), cert. denied, --- U.S. ----, 100 S.Ct. 2942, 65 L.Ed.2d ---- (1980). The defendant has attempted to distinguish these cases on a variety of grounds. Some of these cases involved a state plaintiff who lost, rather than won as did the plaintiff's class here. Others arose in situations where there was no state judicial review, either under the facts or as a result of state law. We believe these distinctions make no difference.
 
 
 14
 As to the first, the res judicata doctrine of merger prohibits relitigation of a claim even though the plaintiff has won in another forum. Thus application of res judicata cannot turn on whether a party wins or loses.
 
 
 15
 As to the defendant's second distinction, the presence of state court review does not change our analysis. Here, review by the state courts is relatively narrow. See General Electric Corp., supra, 365 A.2d at 651 (substantial evidence standard as to PHRC factual determinations). Because of this narrow scope of review and because many of the procedural limitations of the PHRC are imposed by the legislature and the courts, the procedural difficulties we have noted will not be corrected by appellate review. In the present context, the crucial inquiry is how the PHRC proceeds compared to how the federal district court proceeds. Thus we do not think that the presence of state court review requires a different result.
 
 
 16
 Finally, the defendant points to Sinicropi v. Nassau County, 601 F.2d 60 (2d Cir. 1979) (per curiam), cert. denied, 444 U.S. 983, 100 S.Ct. 488, 62 L.Ed.2d 411 (1980), apparently the only circuit court case that does not adopt the majority view and instead holds that res judicata applies to Title VII claims, at least in those cases where the plaintiff invokes state judicial review. Here defendant sought state judicial review and, consequently, Sinicropi is distinguishable on that ground. In any event, given our analysis of Title VII and its objective, we cannot agree that a state determination at any stage is an absolute bar to a Title VII action. To the extent that Sinicropi's reasoning may be inconsistent with our own, we decline to adopt it.[3]
 
 
 17
 Accordingly, we hold that a class action brought before the PHRC and affirmed by the Pennsylvania Supreme Court does not act as res judicata to prevent litigation of the plaintiff's Title VII claim in federal district court.
 
 III.
 
 18
 The order of the district court will be reversed.
 
 
 
 [1]
 According to the complaint filed in the district court, of 21 female employees in the division, 16 were laid off, 1 retired, and 4 were transferred to part-time positions. By contrast, the complaint alleges that of 20 men, 1 was laid off, 16 were transferred to full-time positions, and 3 were bumped to full-time positions. The complaint also states that many of the men had less seniority than some of the women
 
 
 [2]
 It is unclear from the record exactly how the class action was certified by the PHRC in this case or what type of notice the plaintiff received. Given our conclusion, we need not consider whether the procedures employed were adequate to bind the plaintiff by the class determination in the state proceedings
 
 
 [3]
 The PHRC, as amicus curiae, has asserted various abstention doctrines as a ground for affirmance. We have considered its arguments and conclude that none of the doctrines upon which it relies are applicable to the present case