Trudy UNGER, Plaintiff-Appellee,
Counter-Appellant,

v.

CONSOLIDATED FOODS CORPORA-
TION, Defendant-Appellant,
Counter-Appellee.

Nos. 80–2792, 80–2844.

United States Court of Appeals,
Seventh Circuit.

Argued May 28, 1981.

Decided Aug. 14, 1981.

David J. Parsons, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellant, counter-appellee.

John A. Cook, Chicago, Ill., for plaintiff-appellee, counter-appellant.

Before SPRECHER, Circuit Judge, and MARKEY,* Chief Judge, and CUDAHY, Circuit Judge.

SPRECHER, Circuit Judge.

This is an appeal and cross-appeal from the district court's judgment that, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., plaintiff was wrongfully terminated from employment because of her sex and in retaliation for filing a complaint with the Illinois Fair Employment Practices Commission ("FEPC") alleging sex discrimination. These appeals present questions as to: 1) the collateral estoppel effect in Title VII actions of prior state proceedings; 2) the sufficiency of the evidence regarding the findings of sex discrimination and retaliatory firing; 3) the proper measure of damages; and 4) the propriety of the district court's judgment denying plaintiff attorneys' fees for her unsuccessful efforts in the state proceedings.

I

Plaintiff, Trudy Unger, was employed from 1962 to October 16, 1972, as a sales representative by Sirena, Inc. ("Sirena") and subsequently, by Consolidated Foods Corporation.[1] Sirena manufactures and distributes women's swimwear. Until her

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, is sitting by designation.

1. Sirena, Inc. was acquired by Consolidated Foods Corporation in 1971 and thereafter was operated as a division of Consolidated Foods Corporation. References to Sirena are intended to apply to Sirena Inc. and to the Sirena Division of Consolidated Foods Corporation.

first termination, effective July 31, 1972, plaintiff was the exclusive Sirena sales representative for Illinois, Indiana, Minnesota, Michigan, Wisconsin, and Ohio ("Midwest territory"). As such, she was entitled to commissions on all sales of Sirena swimwear to customers in the Midwest territory. In a letter of May 31, 1972, from Sirena, plaintiff was terminated as sales representative in the Midwest territory effective July 31, 1972. Prior to her termination, plaintiff was the only female sales representative in Sirena's ten year history. She was replaced by John A. (Tony) Herrmann, Jr.; no women were interviewed for her position. On June 30, 1972, plaintiff was rehired by Sirena and was appointed sales representative for Iowa, Nebraska, Kansas, Missouri, and Illinois (excluding Chicago) ("Prairie territory") beginning August 1, 1972.

On October 2, 1972, plaintiff filed a charge of sex discrimination, pursuant to the Illinois Fair Employment Practices Act, Ill.Rev.Stat., ch. 48, § 851 et seq., with the FEPC based on her discharge from the Midwest territory. On October 13, 1972, Sirena received notice of the FEPC complaint. On October 13 and October 16, plaintiff received telephone calls from Maurice Newman, Vice President and National Sales Manager of Sirena, and Arnold Seckler, President of Sirena, urging plaintiff to either drop her suit or resign and telling plaintiff the suit would cost her a lot of money and just make the lawyers rich. Plaintiff refused to drop her complaint or resign. On October 16, 1972, Seckler sent plaintiff a letter terminating her employment. On October 27, 1972, plaintiff filed a second claim with the Illinois FEPC asserting that the second termination was in retaliation for filing her first charge.[2]

Plaintiff's state charges were heard before a Hearing Examiner appointed by the FEPC. He recommended to the FEPC a finding in favor of Sirena on the charge of sex discrimination and against Sirena on the charge of retaliatory discharge. The FEPC reviewed the record, reversed the finding of retaliatory discharge, and affirmed the finding of no sex discrimination.

Plaintiff sought review of the FEPC's adverse decision in the Circuit Court of Cook County pursuant to the Illinois Administrative Review Act, Ill.Rev.Stat. ch. 110, § 274 et seq. The Circuit Court concluded that the FEPC's action was contrary to the manifest weight of the evidence, reversed the FEPC's judgment, and found that Sirena's first discharge was discriminatory and the second retaliatory.

Sirena appealed to the Illinois Appellate Court, which reversed the Circuit Court and reinstated the FEPC's findings that the discharges were non-discriminatory and non-retaliatory. *Unger v. Sirena Div. of Consol. Foods Corp.*, 60 Ill.App.3d 840, 18 Ill.Dec. 113, 377 N.E.2d 266 (1978). Plaintiff's Petition for Leave to Appeal to the Illinois Supreme Court was denied.

During the pendency of the Illinois proceedings, plaintiff received a right-to-sue letter from the EEOC and, on February 2, 1977, filed the instant action in the United States District Court for the Northern District of Illinois. Plaintiff alleged discriminatory discharge on the basis of sex in violation of Title VII, 42 U.S.C. § 2000e–2(a)[3] and retaliatory discharge in violation of Title VII, 42 U.S.C. § 2000e–3.[4] A trial

---

**2.** Plaintiff also filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliatory firing. In light of the state proceedings, the EEOC deferred action on the federal charges pursuant to Section 706(c) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(c).

**3.** 42 U.S.C. § 2000e–2(a) provides in pertinent part:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin;

**4.** 42 U.S.C. § 2000e–3 provides in pertinent part:

(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants

de novo was held before Judge Perry, sitting without a jury. At the conclusion of the trial, Judge Perry entered his findings of fact and conclusions of law finding for plaintiff on the issues of sex discrimination and retaliatory discharge. The court awarded plaintiff $141,190.82 as back pay and ordered Sirena to pay plaintiff for her costs and attorneys' fees incurred in prosecuting the federal suit.

Sirena appeals from the district court's conclusion that Sirena violated Title VII in discharging plaintiff from either the Midwest or Prairie territories. Plaintiff cross-appeals from the court's judgment limiting back pay to $141,190.82 and barring plaintiff's recovery of costs and attorneys' fees incurred in the state proceedings.

## II

Sirena argues that the district court erred in denying its motion for summary judgment. Sirena argues that plaintiff is precluded, under the principles of either collateral estoppel or election of remedies, from relitigating the issue of plaintiff's discharge that was decided adversely to her by the FEPC and the Illinois Appellate Court. We reject Sirena's attempt to undermine the effectiveness and independence of de novo federal judicial review of Title VII claims.

In *Batiste v. Furnco Construction Corp.*, 503 F.2d 447, 450 (7th Cir. 1974), *cert. denied*, 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 399 (1975), this Circuit "rejected the application of the doctrines of election of remedies and res judicata to Title VII actions where plaintiffs had litigated their charges to final adjudication in state proceedings. There is a strong Congressional policy that plaintiffs not be deprived of their right to resort to the federal courts for adjudication of their federal claims under Title VII." The court reasoned further that "if federal

actions are barred by the application of election of remedies and res judicata, then the statutory scheme of deferral to state proceedings will be frustrated by requiring that the plaintiff, who desired to bring an action in federal court, first commenced state proceedings but abandon them quickly before an adjudication is made." *Id.*

Our reasoning in *Batiste* is reinforced by the Supreme Court's analysis in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). There, the Supreme Court held that the submission of an employee's complaint of racial discrimination to final arbitration pursuant to the non-discrimination clause of a collective-bargaining agreement did not preclude the employee from seeking a trial de novo in federal district court under Title VII. The Court stressed that "federal courts have been assigned plenary powers to secure compliance with Title VII." 415 U.S. at 45, 94 S.Ct. at 1018. Analyzing Title VII's relationship to other remedies against discrimination, the Court stated that:

> Title VII provides for consideration of employment-discrimination claims in several forums .... And, in general, submission of a claim to one forum does not preclude a later submission to another. Moreover, the legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.

415 U.S. at 47–48, 94 S.Ct. at 1019 (footnotes and citations omitted).

With the exception of the Second Circuit's brief per curiam opinion in *Sinicropi v. Nassau County*, 601 F.2d 60 (2nd Cir.), *cert. denied*, 444 U.S. 983, 100 S.Ct. 488, 62 L.Ed.2d 411 (1979),[5] every court to address

---

for employment, . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

**5.** Sirena's reliance on *Sinicropi v. Nassau County*, 601 F.2d 60 (2nd Cir.), *cert. denied*, 444

U.S. 983, 100 S.Ct. 488, 62 L.Ed.2d 411 (1979), is misplaced. In *Sinicropi*, the Second Circuit held in a brief per curiam opinion that a Title VII plaintiff, who previously had submitted her claim of sex discrimination to the New York State Division of Human Rights and had thereafter appealed the agency's adverse decision through the New York courts, was precluded by the principles of res judicata from relitigat-

the question of the relationship between federal judicial proceedings under Title VII and related state proceedings concerning employment discrimination has used reasoning consistent with our *Batiste* analysis and has refused to give preclusive effect to the state proceedings. *See Smouse v. General Electric Co.*, 626 F.2d 333, 336 (3rd Cir. 1980) (per curiam); *Gunther v. Iowa State Men's Reformatory*, 612 F.2d 1079, 1084–85 (8th Cir.), *cert. denied*, 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980); *Cooper v. Philip Morris, Inc.*, 464 F.2d 9, 11–12 (6th Cir. 1972); *Kralowec v. Prince George's County*, 503 F.Supp. 985, 990–93 (D.Md. 1980).

Sirena attempts to distinguish *Batiste* and the other cited decisions on the ground that, in those cases, it was not the plaintiff-complainant who had sought state judicial review of the state administrative proceedings. In the present case, however, plaintiff elected to seek state judicial review of the FEPC's decision rather than to immediately pursue her right to seek a trial de novo in federal court pursuant to Title VII. Sirena reasons that plaintiff's decision to pursue state judicial review constitutes an election of remedies and precludes relitigation of the issues involved in the state proceedings.

■ We find Sirena's distinction to be without significance. Regardless of which party seeks state judicial review of administrative proceedings, foreclosure of Title VII's federal judicial remedy would serve to discourage plaintiffs from fully pursuing state proceedings and would conflict with Title VII's statutory scheme, which encourages resolution of discrimination claims by state authorities while reserving the right to proceed in federal court. Our analysis is consistent with the Supreme Court's in *Gardner-Denver*, 415 U.S. at 49 n.10, 94 S.Ct. at 1020, that "[t]he policy reasons for rejecting the doctrines of election of remedies and waiver in the context of Title VII are equally applicable to the doctrines of *res judicata* and collateral estoppel."

■ Sirena argues, alternatively, that if the state proceedings are not given preclusive effect, the district court erred, nevertheless, by failing to give any weight to the findings of the Illinois Appellate Court without articulating any reasons for rejecting the state proceedings. Sirena argues that *Gardner-Denver*, 415 U.S. at 60 n.21, 94 S.Ct. at 1025, required the district court to accord very substantial weight to the state court's findings.

Sirena misconstrues the import of the Court's comment in *Gardner-Denver*. The Court clearly recognized Title VII's require-

---

ing in federal court her claim of sex discrimination. The court relied solely upon its holding in *Mitchell v. National Broadcasting Co.*, 553 F.2d 265 (2nd Cir. 1977), that the principles of res judicata apply to actions under 42 U.S.C. § 1981. In *Sinicropi*, the court, without analysis, concluded that the reasoning for applying res judicata in § 1981 actions was equally applicable to suits under Title VII.

*Sinicropi* has been vigorously attacked and soundly rejected by other courts. *Smouse v. General Electric Co.*, 626 F.2d 333, 336 (3rd Cir. 1980); *Gunther v. Iowa State Men's Reformatory*, 612 F.2d 1079, 1083–84 (8th Cir.), *cert. denied*, 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980); *Kralowec v. Prince George's County*, 503 F.Supp. 985, 991–92 (D.Md.1980). As these decisions clearly demonstrate, *Sinicropi* ignores the fundamental differences between actions under 42 U.S.C. § 1981 and those under the unique statutory structure of Title VII. We join these courts in rejecting *Sinicropi's* attempt to interfere with Title VII's statutory scheme by applying principles of res judicata to

prevent plaintiffs from securing a trial de novo in federal court.

Similarly, defendant's reliance on the Supreme Court's recent pronouncement in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), regarding the application of res judicata and collateral estoppel to cases under 42 U.S.C. § 1983 is misplaced. In concluding that res judicata and collateral estoppel could bar a plaintiff's federal suit under 42 U.S.C. § 1983 on the basis of prior state proceedings, the Court stressed that the statutory and congressional history of § 1983 does not evidence any intent to deny binding effect to valid state proceedings. 101 S.Ct. at 416–17. That history, however, is in direct contrast to the abundant statutory and legislative evidence that Title VII envisions a dual federal and state enforcement scheme culminating in an independent right to a trial de novo in federal court. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44–47, 94 S.Ct. 1011, 1017–1019, 39 L.Ed.2d 147 (1974).

ment of a trial de novo on plaintiff's claims of employment discrimination. Although the Court suggested that the trial court could receive the record of state proceedings as evidence to be accorded such weight as the court deems appropriate, the Court also stressed that "courts should ever be mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum." 415 U.S. at 60 n.21, 94 S.Ct. at 1025.

In the present litigation, the factual background of the case is largely undisputed. The significant question in this case, and in the numerous, conflicting state proceedings, is the inference of discriminatory intent to be drawn from those facts. This question was specifically a matter for the district court to consider in its trial de novo. The trial court's ultimate legal conclusion that Sirena did discriminate against plaintiff is exactly the type of independent legal analysis contemplated by Title VII. *See Stewart v. General Motors Corp.*, 542 F.2d 445, 449 (7th Cir. 1976), *cert. denied*, 433 U.S. 919, 97 S.Ct. 2995, 53 L.Ed.2d 1105 (1977). Consequently, the trial court committed no reversible error in its refusal to

accord greater weight to the contrary legal conclusions of the state proceedings.[6]

## III

Sirena challenges the sufficiency of the evidence to support the district court's findings of fact and conclusions of law that Sirena violated Title VII. "In reviewing the district court's decision, we are bound under Fed.R.Civ.P. 52(a) to accept findings of fact unless they are clearly erroneous." *Stewart v. General Motors Corp.*, 542 F.2d at 449, *citing Prince v. Packer Mfg. Co.*, 419 F.2d 34, 36 (7th Cir. 1969).[7] However, "[a] distinction must be drawn between subsidiary facts to which the 'clearly erroneous' standard applies, and the ultimate fact of discrimination within the meaning of Title VII . . . ." *Id.* The latter requires "an independent examination of whether defendant's conduct constitutes a violation of Title VII." *Id.*

## A

Sirena challenges the district court's conclusion that Sirena discriminated on the basis of sex in discharging plaintiff as sales representative for the Midwest territory.[8] Sirena does not challenge the trial

6. In light of our conclusion that plaintiff's suit is not barred by the prior state proceedings and that the trial court did not err in refusing to accord greater weight to the state proceedings, Sirena's "Renewed Motion to Supplement Record," which was taken with the case at oral argument, is denied.

7. Sirena argues that since the district court adopted plaintiff's proposed findings of fact almost verbatim, except with respect to the measure of damages, we should scrutinize those findings more closely than usual. As stated on numerous other occasions, "[w]e agree that we must review the record carefully in such cases, but emphasize that the 'clearly erroneous' standard still applies." *Canfield v. Rapp & Son, Inc.*, 654 F.2d 459, at 466 n.8 (7th Cir. 1981), and cases cited therein.

8. Sirena first raises a jurisdictional question. It challenges the court's conclusion that plaintiff was an "employee" within the meaning of Title VII rather than an independent contractor not within the scope of Title VII's coverage. Title VII defines "employee" very broadly to mean "an individual employed by an employer

. . . ." 42 U.S.C. § 2000e(f). In determining whether a business relationship is one of employee-employer, courts look to the "economic realities" of the relationship and the degree of control the employer exercises over the alleged employee. *See Spirides v. Reinhardt*, 613 F.2d 826, 831–32 (D.C.Cir.1979). In deciding whether an individual is an employee and, thus, within the scope of Title VII's protections, courts should keep in mind the remedial nature of Title VII and construe it liberally so as to further the goals and purposes of eliminating discrimination in employment. *See Spirides*, 613 F.2d at 831; *Quijano v. University Federal Credit Union*, 617 F.2d 129, 131 (5th Cir. 1980).

Sirena does not argue that the district court applied an incorrect standard or that the court's detailed findings outlining the scope and nature of the employment relationship are incorrect. Rather, Sirena argues that the district court's conclusion based on these facts is incorrect and that the court should have given greater significance to plaintiff's contract with Sirena, which referred to her as an "independent contractor."

court's conclusion that plaintiff established a prima facie case of sex discrimination by introducing evidence that plaintiff, the only female sales representative in Sirena's history, was terminated as sales representative for the Midwest territory and, with no women being interviewed for her position, was replaced by a man. In addition, plaintiff introduced abundant evidence to show that she had been performing her job for almost a decade without receiving any oral or written criticisms of her job performance and that, in fact, plaintiff's sales record for the Midwest territory far outstripped the rate of growth for Sirena's nationwide sales. Consequently, it is clear that plaintiff carried her burden of establishing a prima facie case of sex discrimination. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

Sirena's contention is that the court erroneously concluded that Sirena failed to articulate legitimate, non-discriminatory reasons for plaintiff's discharge and also erroneously concluded that plaintiff proved that Sirena's proffered reasons are pretextual.

Sirena's argument reduces itself to a mere disagreement with the court's assessment and balancing of the numerous factors in the employment context. As such, we find it unpersuasive. First, "[c]onsideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative." *Spirides*, 613 F.2d at 831 (footnote omitted). Consequently, "although contract language may be indicative to some degree of the intention of the parties, it is not necessarily controlling." *Spirides*, 613 F.2d at 832 (footnote omitted). Thus, although plaintiff's contract was in evidence, its language does not control plaintiff's status under Title VII. Second, the district court, in Finding # 11, listed eleven examples of the ways in which Sirena exercised economic and managerial control over plaintiff, including regular sales reports, payment of some business expenses, regular draws against commissions, plaintiff's exclusive and lengthy representation of Sirena, Sirena's withholding of taxes beginning in 1972, and Sirena's treatment of plaintiff's successor. The district court did not abuse its discretion by weighing these factors and concluding that plaintiff was an "employee" within the meaning of Title VII.

Sirena offered evidence that plaintiff's discharge was a part of a company-wide sales force reorganization in which five other salespersons, all male, also were terminated. Sirena also offered testimony that plaintiff was being replaced in part because of her inability to adequately service large department store accounts. We need not decide whether, in fact, the court erroneously concluded that Sirena's reasons were inadequate to rebut plaintiff's prima facie case of sex discrimination,[9] for we are convinced that the court found, and the evidence supports the finding, that Sirena's reasons are pretextual. *See Sherkow v. Wisconsin, Dept. of Public Instruction*, 630 F.2d 498, 503 (7th Cir. 1980).

First, the district court found that plaintiff's termination was unrelated to any alleged sales reorganization. The court's finding that four of the terminated sales representatives were dismissed for evident incompetency or old age was amply demonstrated by sales figures and company documents. The fifth representative, was, like plaintiff, a very successful salesperson whose territory was reorganized. But, unlike plaintiff, he was offered the bulk of his

9. There is some confusion between the district court's conclusion that Sirena failed to articulate any legitimate, nondiscriminatory reasons for plaintiff's discharge and its conclusion that the reasons articulated by Sirena are a mere pretext for a discriminatory discharge on the basis of sex. There has been nearly continuous confusion in the lower courts regarding the proper semantics to employ in describing the respective burdens of proof and production of evidence in Title VII employment discrimination cases. *Compare Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), with *Bd. of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), and *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). We are convinced that, in light of the trial court's extensive findings of fact discussing the pretextual nature of defendant's proffered reasons, the court properly considered the evidence and did not impermissibly shift the burden of proof to Sirena. *See Burdine*, 101 S.Ct. at 1093 ("ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff").

former territory and a protective agreement to maintain his earnings. No such offer was extended to plaintiff. On the basis of these findings, the district court concluded that the sales reorganization was pretextual with respect to plaintiff. We have reviewed the record and do not find the court's analysis to be clearly erroneous.

■ Second, the court found that plaintiff had never received any oral or written criticisms of her sales performance. Unlike the situation with respect to the other terminated sales representatives, Sirena had no documents critical of plaintiff's sales performance. Indeed, Sirena's records reveal that plaintiff's sales had increased from $20,620 in 1962 to $572,016 for 1972 (2,674%), while Sirena's overall sales during that period had only increased from $383,241 to $3,578,826 (833%). Plaintiff had successfully introduced Sirena's swimwear line into almost every major department store in the Midwest territory. Two purchasers for major department stores testified that plaintiff was very competent in servicing their needs. In light of this and other evidence, the court concluded that, once again, Sirena's proffered explanation was pretextual. The court's findings are not clearly erroneous.

Plaintiff met and carried her burden of establishing a prima facie case of sex discrimination and of proving that Sirena's proffered reasons were pretextual. The district court properly concluded that Sirena had violated 42 U.S.C. § 2000e–2(a) by discharging plaintiff from the Midwest territory on the basis of her sex.

**B**

■ Sirena also challenges the district court's conclusion that, in terminating plaintiff from the Prairie territory, Sirena had retaliated against plaintiff for filing a charge of sex discrimination with the FEPC and, thus, had violated 42 U.S.C. § 2000e–3(a). Sirena does not argue that plaintiff failed to show a prima facie case of retaliation. Rather, Sirena again argues that the court erroneously dismissed its proffered reasons for plaintiff's second termination as pretextual.

Sirena offered two basic reasons justifying its discharge of plaintiff from the Prairie territory. First, Sirena contended that plaintiff's failure to travel outside of Illinois between August 1, 1972 and October 16, 1972, the date of her termination, demonstrated her lack of success and effort on behalf of Sirena. Second, Sirena contended that plaintiff's dismissal was justified because plaintiff had contracted to represent a noncompetitive knit sweater line of Beldoch-Popper in a different territory.

The district court carefully considered Sirena's proffered reasons for plaintiff's dismissal and concluded that they were pretextual. We conclude that the court's findings are not clearly erroneous. There is abundant, and nearly overwhelming, evidence that plaintiff's termination from the Prairie territory was motivated directly and primarily by a desire to retaliate against plaintiff for filing the first charge of sex discrimination with the FEPC. The evidence casts grave doubt upon the validity of Sirena's alleged reasons for dismissal.

■ First, plaintiff did not receive her show samples from Sirena until September 9, 1972, thus precluding earlier travels. Second, plaintiff had attended Sirena's August sales meeting in California and had made arrangements to show the Sirena line at major buyers' conventions in St. Louis and Chicago in October and November. Third, plaintiff had begun to make sales contacts in the area surrounding Chicago and intended to work outwards through the entire territory after the St. Louis convention. Plaintiff had discussed her travel strategy with officers of Sirena, and they had not objected. Indeed, at the time of her termination, plaintiff's sales in the Prairie territory exceeded the sales for the comparable period of the prior year. Fourth, there is evidence that Sirena knew plaintiff required a second, noncompetitive line in order to survive in the Prairie territory, that Sirena consented to her carrying a second line, that Sirena had been informed by plaintiff of her intention of carrying the

Beldoch-Popper line in an adjacent territory, and that Sirena had not objected.[10]

Finally, in addition to the evidence which casts grave doubt upon the legitimacy of Sirena's reasons, there is overwhelming evidence of a discriminatory motive. Upon first learning of plaintiff's FEPC complaint, Sirena Officials called and harassed plaintiff, urging her to either drop her suit or resign. When plaintiff refused to do either, Sirena immediately terminated her for the alleged insufficiencies in her work. We simply cannot ignore the timing of Sirena's actions or the very transparent reasons given for the termination. Consequently, the district court properly concluded that Sirena had violated 42 U.S.C. § 2000e–3(a).

## IV

The first issue on plaintiff's cross-appeal concerns the propriety of the district court's calculation of back pay. The district court, acknowledging its inability to calculate back pay with absolute precision, awarded damages for 1973 through 1980 based on the difference between plaintiff's actual earnings during those years ($44,309.18) and the amount she would have earned absent Sirena's wrongful discrimination, estimated by the court to be $25,000 per year for a total of $200,000. The latter figure was based on plaintiff's estimated average earnings from Sirena for the eight year period 1973–1980, considering plaintiff's sales record, her subsequent sales efforts, and her intervening physical disabilities. In addition to reducing the $200,000 figure by plaintiff's actual earnings during this period, the court also reduced the award by $14,500 for special expenses plaintiff would have incurred to maintain sales because of intervening physical incapacities of plaintiff. The court also refused to award prejudgment interest or "front pay." Thus,

the district court awarded plaintiff $141,190.82 as back pay.

Plaintiff, however, argues that the district court should have calculated the back pay award not on a speculative estimate of plaintiff's earnings, but on the actual earnings of plaintiff's successor in the Midwest territory, Tony Herrmann. Plaintiff introduced evidence that Herrmann's actual earnings after expenses from 1973 through 1980 totalled $387,831.10. If this figure were reduced by plaintiff's actual earnings during 1972–1980 and her special expenses, plaintiff would receive $329,021.92 as back pay. Alternatively, plaintiff argues that a flat $25,000 per year rate fails to take into account plaintiff's regular and consistent increase in earnings over the prior years. Plaintiff not only points to her past sales record and earnings increases, but also relies on Herrmann's actual sales and earnings increases as evidence that her income also would have risen during these years. Consequently, plaintiff argues that the court erred in its calculation of back pay.

It is well established that the trial court has broad discretion in awarding back pay and that its method of assessing the amount of back pay will be set aside only for an abuse of discretion. *Sherkow v. Wisconsin Dept. of Public Instruction*, 630 F.2d 498, 504 (7th Cir. 1980); *Comacho v. Colorado Electronic Technical College, Inc.*, 590 F.2d 887, 888 (10th Cir. 1979); *Waters v. Wisconsin Steel Works of Internat'l Harvester Co.*, 502 F.2d 1309, 1321 (7th Cir. 1974), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976); *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 421 (6th Cir. 1974).

■ The district court's findings discuss at length the court's method and reasons

10. Sirena asserts that the district court erred in denying its request to subpoena and depose the national sales manager of Beldoch-Popper in hopes of impeaching plaintiff's testimony regarding the industry practice of sales representatives carrying noncompetitive lines in adjacent territories. Defendant's request came at the close of evidence of an already protracted trial. The trial court has broad discretion to

control the course of litigation and will be reversed only upon a clear showing of abuse of discretion and of prejudice to the right of the moving party. We find neither an abuse of discretion in the denial of defendant's untimely motion, nor, in light of the overwhelming evidence of Sirena's retaliatory motive, any significant prejudice to Sirena.

for the award of back pay. The court stressed, among other things, the highly speculative and personal nature of sales, plaintiff's intervening physical infirmities, and plaintiff's actual sales performance. Although different considerations may be appropriate and within a court's discretion, see *Kamberos v. GTE Automatic Electric, Inc.*, 603 F.2d 598, 603 n.6 (7th Cir. 1979); *EEOC v. Kallir, Philips, Ross, Inc.*, 420 F.Supp. 919, 923 (S.D.N.Y.1976), *aff'd*, 559 F.2d 1203 (2nd Cir.), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977), we find no abuse of discretion in the district court's use of an estimate of plaintiff's sales earnings as opposed to use of her successor's sales record.

Plaintiff also argues that an award of prejudgment interest to compensate for the eight years between her discharge and the district court's judgment was appropriate. "While we would agree that interest on wages due and owing is an available remedy to a plaintiff in a Title VII action, . . . the decision whether or not to award such interest is within the discretion of the trial court." *Taylor v. Philips Indus., Inc.*, 593 F.2d 783, 787 (7th Cir. 1979) (citations omitted). We find no abuse of discretion in the district court's denial of prejudgment interest in this case.

### V

Plaintiff's second argument on the cross-appeal challenges the district court's denial of attorneys' fees for work done in connection with the state proceedings. Plaintiff argues that in light of *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), she is entitled under 42 U.S.C. § 2000e–5(k),[11] as the "prevailing party" to recovery of her attorneys' fees, absent special circumstances, *see Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978), for all work done in connection

with prosecuting this Title VII claim. We agree.

In *New York Gaslight Club*, the Supreme Court held that Section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k), authorized "a federal-court action to recover an award of attorney's fees for work done by the prevailing complainant in state proceedings to which the complainant was referred pursuant to the provisions of Title VII." 447 U.S. at 71, 100 S.Ct. at 2034. Plaintiff prevailed throughout the state administrative and judicial proceedings on her allegation of race discrimination, which had been referred to the state agency pursuant to 42 U.S.C. § 2000e–5(c). During the pendency of the state judicial appeals, plaintiff filed a federal court action under Title VII. When the state proceedings became final, plaintiff moved in federal court for an award of attorneys' fees for work done in the state and federal proceedings. The district court denied recovery of fees for the state proceedings, and the Second Circuit reversed. The Supreme Court affirmed, in an opinion clearly applicable to the case at bar.

First, the Court determined that Congress intended Section 706(k) to authorize fee awards for work done in administrative as well as judicial proceedings. 447 U.S. at 61, 100 S.Ct. at 2029. The Court then concluded that the statute did not distinguish between state proceedings and federal proceedings. 447 U.S. at 61–63, 100 S.Ct. at 2029–2030. The Court then analyzed the purpose behind § 706(k) in conjunction with the joint state and federal enforcement scheme envisioned by Title VII. The Court noted that:

> Permitting an attorney's fee award to one in respondent's situation furthers this goal [of facilitating the bringing of discrimination complaints], while a contrary rule would force the complainant to bear the costs of mandatory state and local proceedings and thereby would inhibit the enforcement of a meritorious discrimination claim.

---

11. Section 706(k) of Title VII, 42 U.S.C. § 2000e–5(k) states:

    In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commis-

sion or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

447 U.S. at 63, 100 S.Ct. at 2030. The Court reasoned further that a denial of attorneys' fees for work done in state proceedings would also undermine Title VII's goal of encouraging the resolution of discrimination claims in state proceedings. 447 U.S. at 65, 100 S.Ct. at 2031. Consequently, the Court held that the plaintiff there was entitled to attorneys' fees for work done in state proceedings.

▮ Sirena attempts to distinguish *New York Gaslight Club* by stressing that here, plaintiff was not a "prevailing party" in the state administrative or judicial proceedings. Sirena's logic is not compelling. First, we agree with the District Court for the District of Columbia that:

> In Title VII litigation "prevailing party" refers to the party who has successfully maintained a claim and does not depend upon the degrees of success at any particular stage of its prosecution.

*Marshall v. Communications Workers of America*, 21 EPD (CCH) ¶ 30,318 at 12,723 (D.D.C.1979).

▮ Second, we believe the Supreme Court implicitly rejected Sirena's reasoning in *New York Gaslight Club*. In concluding that a Title VII complainant could bring a civil suit in federal court solely to recover attorneys' fees for work in state proceedings wherein complainant had prevailed on the merits, the Court stated:

> It would be anomalous to award fees to the complainant who is unsuccessful or only partially successful in obtaining state or local remedies, but to deny an award to the complainant who is successful in fulfilling Congress' plan that federal policies be vindicated at the state or local level.

447 U.S. at 66, 100 S.Ct. at 2032. We believe the Court meant that plaintiffs who ultimately prevail in federal court are entitled to recover attorneys' fees for work in state proceedings which Title VII required and encouraged them to pursue, without respect to the success or failure on the merits of the state proceedings. To hold

otherwise would discourage resolution of discrimination claims in state proceedings, would be inconsistent with Title VII's scheme of coordinated state and federal enforcement, and would contradict the clear meaning of § 706(k). Consequently, the district court's judgment denying attorneys' fees for work done in state administrative and judicial proceedings is reversed and remanded for a determination of an appropriate award.[12]

### VI

For the foregoing reasons, the judgment of the district court finding Sirena liable for violations of Title VII, 42 U.S.C. §§ 2000e–2(a) and 3(a), and awarding plaintiff back pay is affirmed, and the court's ruling denying attorneys' fees for work done in the state proceedings is reversed and remanded. The judgment is

Affirmed In Part. Reversed And Remanded In Part.

---

**12.** We have reviewed the record and conclude that no "special circumstances" exist that would justify denial of attorneys' fees in this case.