**Shirley FELTS, Plaintiff,**

v.

**RADIO DISTRIBUTING COMPANY, INC., Defendant.**

**No. S 83–321.**

United States District Court, N.D. Indiana, South Bend Division.

March 15, 1985.

See also 637 F.Supp. 229.

Aladean M. DeRose, South Bend, Ind., for plaintiff.

Anthony V. Luber, Jeffery A. Johnson, South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Following the mandates most recently announced in *Vera Horn v. Duke Homes*, 755 F.2d 599, (7th Cir.1985), this court conducted an additional evidentiary hearing on damages on March 6, 1985.

### I.

■ In determining the amount of damages to award in a Title VII case, the court must first determine two variables: (1) the amount of income the plaintiff would have earned per week had she been employed by the defendant; and (2) the total number of weeks the effects of the discrimination lasted. Once these two variables have been determined, the amount of damages is calculated by multiplying the weekly income times the number of weeks.

The first variable this court must determine is the average weekly income Felts would have earned had she continued in employment with Radio Distributing. Felts was a salesperson whose income is determined by combining her salary with commissions. The determination of Felts' salary is not in dispute. She earned $4.70 per hour, which results in a $188.00 (40 hours × $4.70) weekly base salary.

■ The only figure that is in dispute is the determination of the commission figure that Felts would have earned during this period. To determine the commission figure this court must look to the actual sales figures of Shirley Felts while she was employed by Radio Distributing and apply the commission structure to those figures.

This method for calculation of commission earnings was approved by the Seventh Circuit in *Unger v. Consolidated Foods Corp.*, 657 F.2d 909 (7th Cir.1981), *vacated on other grounds*, 456 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d (1982). In *Unger*, the plaintiff, a salesperson, claimed that her back pay should be calculated by adopting the pay earned by her successor. The district court disagreed, holding that the more accurate method of calculating back pay in a commission situation was to apply the actual sales figures of the plaintiff while employed with the defendant to the commission formula. The Seventh Circuit agreed with the district court that the calculation of commission back pay was to be determined by using plaintiff's actual sales figures instead of adopting the income of her successor. In addressing this issue, that court stated:

> Plaintiff, however, argues that the district court should have calculated the back pay award not on a speculative estimate of plaintiff earnings, but on the actual earnings of plaintiff's successor in the Midwest territory, Tony Herrmann....
>
> \* \* \* \* \* \*
>
> It is well established that the trial court has broad discretion in awarding back pay and that its method of assessing the amount of back pay will be set aside only for an abuse of discretion....
>
> \* \* \* \* \* \*

The district court's findings discuss at length the court's method and reasons for the award of back pay. The court stressed, among other things, the highly speculative and personal nature of sales, plaintiff's intervening physical infirmities, and plaintiff's actual sales performance. Although different considerations may be appropriate and within a court's discretion, [citations omitted], we find no abuse of discretion in the District Court's use of an estimate of plaintiff's sales earnings as opposed to use of her successor's sales record.

657 F.2d at 918–19.

Radio Distributing changed its commission structure effective September 1, 1982.

Rick Jones, controller of Radio Distributing, testified that the average weekly commission of Felts under the old commission formula was $13.79. Further, the average weekly commission under the new formula was $78.12. Therefore, for the seven-week period from July 12, 1982 through September 1, 1982, the weekly income from Shirley Felts with Radio Distributing was $201.79 ($188.00 + $13.79). For the period beginning after September 1, 1982, the weekly income for Shirley Felts was $266.12 ($188 + $78.12).

In *Horn, supra,* the Seventh Circuit acknowledges that a plaintiff has the burden to mitigate his/her damages. On page 607 of 755 F.2d 599, the court states:

> Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce back pay otherwise allowable.

42 U.S.C. § 2000e–5(g) (1982)

This court has already held it will reduce the allowable back pay by any interim amounts earned by Felts through either unemployment compensation or earnings from other employment. Therefore, the only factor left to determine is the amount that Shirley Felts could have earned had she exercised reasonable diligence.

■ Felts failed in her duty to mitigate her damages when she terminated her employment with Inlander Steindler Paper Company in July 1984. Kent Dennis, the manager of Inlander Steindler's South Bend office testified credibly that Felts quit Inlander Steindler the day after she returned from maternity leave. Mr. Dennis testified that, although Felts' former position remained available to her, she no longer desired to work for Inlander Steindler because (1) she did not like the reorganization of the company and (2) she felt she could not handle her newly-reorganized responsibilities. Therefore, in failing and refusing to remain gainfully employed with Inlander Steindler following the birth of her second child, Felts failed to mitigate her damages.

## II.

■ In employment discrimination actions, the Seventh Circuit places the question of whether to award prejudgment interest squarely within the trial court's discretion. *Taylor v. Philips Industries, Inc.,* 593 F.2d 783 (7th Cir.1979), involved a woman who brought a gender-based Title VII action against her former employer. The district court held that the woman succeeded in establishing that the employer had unlawfully discriminated against her, but rejected the woman's claim for prejudgment interest. In affirming the district court's denial of prejudgment interest to the woman, the Seventh Circuit said:

> While we agree that interest on wages due and owing is an available remedy to a plaintiff in a Title VII action, ... the decision whether or not to award such interest is within the discretion of the trial court. *See, e.g., Lodges 743 and 1746, International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. United Aircraft Corp.,* 534 F.2d 422, 446 (2d Cir.1975), *cert. denied,* 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976). We find no abuse of that discretion in the present case.

593 F.2d at 787. *See also Unger v. Consolidated Foods Corp.,* 657 F.2d 909, 919 (7th Cir.1981), *vacated on other grounds,* 456 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1982) (district court did not abuse its discretion in refusing to award prejudgment interest to successful Title VII claimant). Therefore, whether to award prejudgment interest to Felts is a matter within this court's sound discretion.

■ Persuasive authority urges this court to exercise its discretion to deny Felts' prejudgment interest claim. *Syvock v. Milwaukee Boiler Mfg. Co.,* 665 F.2d 149 (7th Cir.1981) is particularly apposite. There a man brought an Age Discrimination in Employment Act (ADEA) claim against his former employer. Citing *Taylor, supra,* the Seventh Circuit affirmed the district court's denial of prejudgment interest to the claimant, even though he

succeeded in establishing unlawful discrimination. The court stated:

Here, the court found that there was barely enough evidence on which the plaintiff could prevail, and in fact, found that there was absolutely no evidence of willfulness, while at the same time determining that the plaintiff had not attempted to mitigate damages in a reasonable manner.

665 F.2d at 162. Felts introduced no evidence of willfulness. In quitting her Inlander Steindler position on the day she returned from her second maternity leave, Felts has failed to reasonably mitigate her damages.

Another factor courts consider in deciding whether to award prejudgment interest is whether the damage award was determinable before judgment. *Brotherhood of Ry. & Airline Clerks v. Burlington Northern*, 555 F.Supp. 1061, 1062 (E.D.Ill. 1983), involved a senior railroad employee's employment discrimination claim against his employer. The position in question paid $45.33 per day during the period in which it was denied to the plaintiff. Uncertainty, however, surrounded the amount which the court would actually award the plaintiff. For example, uncertainty surrounded the amount by which the court would offset the plaintiff's award for the plaintiff's actual earnings during the period in question. Due to this uncertainty in the amount which the court would actually award the plaintiff, the court denied the plaintiff's petition for prejudgment interest, citing *Taylor, supra,* and *Syvock, supra.* The court noted that "it would be unfair and inequitable to require [the employer] to compensate [the employee] for interest covering a two-year period." 555 F.Supp. at 1063.

■ In summary, the Seventh Circuit clearly places the question of whether to award prejudgment interest in employment discrimination actions within the district court's discretion. In deciding whether to award prejudgment interest in employment discrimination actions, federal courts properly consider (1) the weight of evidence on which the plaintiff prevailed on the liability issue; (2) whether the defendant's employment discrimination was wilful; (3) whether the plaintiff reasonably attempted to mitigate her damages; and (4) whether the amount of the plaintiff's damage award was determinable before final judgment. This court now declines to award prejudgment interest.

### III.

It is well settled that the inclusion of the costs of health care benefit insurance is within the discretion of the trial court. In *Syvock v. Milwaukee Boiler Mfg. Co., Inc.*, 665 F.2d 149 (7th Cir.1981), the Seventh Circuit denied a successful employment discrimination plaintiff's health insurance claim saying:

The inclusion of the cost of health insurance benefits in the award is discretionary with the trial court, and we find no abuse of discretion in this case.

665 F.2d at 161.

■ This court will not grant Felts' health insurance claim.

### IV.

As to attorney fees, 42 U.S.C. § 2000e–5(k) provides that "[i]n any action or proceeding under this title the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee." Federal courts have universally held that the amount of attorney fees awarded in a Title VII action lies within the district court's sound discretion. *See, e.g., Syvock v. Milwaukee Boiler Mfg. Co.,* 665 F.2d 149, 162 (7th Cir.1981); *Taylor v. Philips Industries, Inc.,* 593 F.2d 783, 787 (7th Cir.1979, *cert. denied.* 458 U.S. 232 (1982); *Waters v. Wisconsin Steel Works,* 502 F.2d 1309, 1322 (7th Cir.1974), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976).

■ Although the amount of attorney fees awarded to a successful Title VII plaintiff is within the trial court's discretion, a great deal of authority exists to guide this court in exercising its discretion concerning Felts' attorney fees claim. A

Title VII claimant may recover attorney fees only for successfully prosecuted claims or portion of claims. *See, e.g., Muscare v. Quinn*, 614 F.2d 577, 580–81 (7th Cir.1980); *Batiste v. Furnco Const. Corp.*, 503 F.2d 447, 451 (7th Cir.1974), *cert. denied*, 420 U.S. 928, 95 S.Ct. 1127, 43 L.Ed.2d 399 (1975); *Williams v. General Foods Corp.*, 492 F.2d 399, 409 (7th Cir. 1974). A Title VII claimant may recover attorney fees only for attorney services reasonably necessary to the successfully prosecuted claim or portion of claim. *See, e.g., Singer v. Mahonig County Bd. of Men. Retard.*, 519 F.2d 748, 749 (6th Cir. 1975). The Title VII claimant has the burden of proving that attorney services were reasonably necessary. *See, e.g., Johnson v. Georgia Hwy. Exp. Inc.*, 488 F.2d 714, 720; *Lockheed Minority Solidarity Coalition v. Lockheed Missiles and Space Co.*, 406 F.Supp. 828, 831 (N.D.Cal.1976). To carry this burden, the claimant must present to the court with easily analyzable evidence of the time claimed to have been expended. *Id.* Evidence relevant to a claim for attorney fees includes records of the time the attorney worked on the case and of the fees the attorney received in other, similar Title VII cases. *See, e.g., Stastny v. Southern Bell Tel. & Tel. Co.*, 77 F.R.D. 662, 663–64 (W.D.N.C.1978), *aff'd in part on other grounds* and *rev'd in part on other grounds*, 628 F.2d 267 (4th Cir.1980).

■■■ When a Title VII attorney fee claim has been proved, courts test the claim in light of Disciplinary Rule 2–106 of the American Bar Association's Code of Professional Responsibility:

Factors to be considered as guides in determining the rasonableness [sic] of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

*Waters v. Wisconsin Steel Works*, 502 F.2d 1309, 1322 (7th Cir.1974), *cert. denied*, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976). Where attorney fees are awarded, the district court's record should include an analysis of these factors. *See, e.g., Waters, supra*, at 1322; *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714–717 (5th Cir.1974).

■■■ Under the reasoning and result most recently announced in *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425 (5th Cir.1984), this plaintiff certainly prevailed on the "central issue" here. The court awards counsel for plaintiff fees for 100 hours at the rate of $60.00 per hour or $6000.00, plus costs of $384.84.

The following is the computation of her back pay damage award:

Total of 94 weeks:

| $ 201.79 per week | $ 266.12 per week |
| × 7 weeks | × 87 weeks |
| $1,412.53 | $23,152.44 |

$ 1,412.53
+ 23,152.44
$24,564.97   preliminary back pay award

Deductions from preliminary back pay award:

| Unemployment: | |
| 1982 | $ 1,932.00 |
| 1983 | 2,184.00 |
| Earned income: | |
| 1983 | $ 3,919.56 |
| 1984 | 2,916.75 |
| | $10,952.31 |

$24,564.97   preliminary back pay award
- 10,952.31   unemployment and earned income deductions
$13,612.66   total back pay award

## JUDGMENT

Judgment shall enter for the plaintiff against the defendant for the following:

1. Back Pay      $ 13.612.66
2. Attorney fees      6,000.00
3. Costs      384.84

SO ORDERED.