Forrest A. JENKINS, Plaintiff,

v.

TRAVELERS INSURANCE COMPANY, a Connecticut Corporation, Defendant.

Civ. No. 74–556.

United States District Court, D. Oregon.

Sept. 14, 1977.

Charles J. Merten, Portland, Or., for plaintiff.

Herbert H. Anderson, Portland, Or., for defendant.

## OPINION

BURNS, District Judge:

This is both a typical and an atypical employment discrimination case. Its scenario is familiar: an embittered former employee, a defensive employer, acrimonious exchanges, and hyperbole and self-righteousness from both sides. Each side feels aggrieved by the posture adopted by the other; each mourns or maligns the motive of the other. Because determination of a state of mind—racial motivation, or the lack of it—is such a difficult problem for the fact finder, these cases are typically difficult.

This case is, however, atypical because it presents an unusual and threshold question—was plaintiff an "employee," within the meaning of Title VII, the statute under which the case was brought. (42 U.S.C. § 2000e et seq.) Because I find and hold that plaintiff (Jenkins) was not, I am not required to resolve the factual issue of racial discrimination, or the lack of it.

Jenkins is a negro male. In the fall 1971 he applied to enroll in Travelers Insurance Company's career agent accelerated program and was accepted. The program was designed for experienced salesmen, which Jenkins was; he had already sold insurance for four years for another company.

Jenkins, like others on this program, received no salaries or wages. Their only compensation came from commissions on insurance placed with Travelers. Travelers advised the trainees that they were self-employed agents, and that they therefore had to file the appropriate reports required by the Social Security Act.

Travelers did not withhold taxes on trainees. Jenkins did not report any withholding. He paid the taxes due from a self-employed person on the appropriate tax form.

Agents such as Jenkins who had not worked at least three years for Travelers were not eligible for the company's retirement program. They were eligible to enroll in Travelers' group life and health plan, but Travelers did not contribute to the plan. The only contributions came from the agents themselves.

Jenkins' contract with Travelers left him free to solicit whatever insurance applications his license permitted. He could sell any type of insurance. He could sell to anyone he wished. He could and did sell both to blacks and whites. Demonstrating the business acumen without which it could not have reached its well known success, Travelers encouraged Jenkins to actively solicit applications in the black community of which he was a part and in which he may have been the only insurance agent then working the Portland area.

Jenkins did not have to report his daily activities. He received some assistance and training on the job but virtually no supervision. As will be seen, such supervision was not necessary to promote diligence and productivity; unproductive agents were simply terminated and new ones brought in.

To provide trainees with sustenance, Travelers advanced interest-free weekly loans based on the trainee's projected income needs. Contracts with trainees provided for these loans and stated that the recipient was liable to repay the advance. Jenkins consequently signed promissory notes for each advance he received.

Plaintiff treated these advances as loans since he did not report them as income on his federal tax returns.

In all of this, it will be seen that the classic indicia of an employer-employee relationship are missing. The alleged employer lacked the right to control or direct the alleged employee; the alleged employee received no salary and declared no income. In classical terms, Jenkins was a self-employed independent contractor.

Whether classical terms should be applied here, however, is disputed. Federal judges have been instructed to read the term "employee" with greater liberality in connection with social legislation than exists under the common law test. In this view, common law definitional strictures ought not to be stumbling blocks on the path toward achievement of social objectives. *See*, e. g., *NLRB v. Hearst Publications*, 322 U.S. 111, 129, 64 S.Ct. 851, 88 L.Ed. 1170 (1944).

Despite this requirement, courts confronted with plaintiffs whose conditions of employment were similar to Jenkins' have found them not to be employees as defined by Title VII. *See*, e. g., *Mathis v. Standard Brand Chemical Industries, Inc.*, 10 EPD ¶ 10,306 (N.D.Ga.1975). *Mathis* employed the test used in *United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947), for distinguishing employees from independent contractors. This test emphasizes the

risk undertaken by each party, the alleged employer's right to control or actual exercise of control, and the extent to which the alleged employee's success depends on his own initiative, judgment, and energy. 331 U.S. at 719, 67 S.Ct. 1463. All these indicia point to the conclusion that Jenkins was an independent contractor and not a Title VII employee.[1]

Jenkins therefore is not entitled to recover, and, as mentioned above, I need not reach the merits as to the claimed impermissible discrimination.

The foregoing shall constitute findings of fact and conclusions of law pursuant to Rule 52, F.R.Civ.P.

---

1. While there are some factual matters which point in the opposite direction, these few are far outweighed by those which call for classification as an independent contractor.