**Linda M. DIXON, Plaintiff,**

v.

**Robert BURMAN and American Republic Insurance Company, Defendants.**

**Civ. No. F 82–299.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Aug. 12, 1983.

Linda M. Dixon, pro se.

Ronald R. Snyder, Gregory J. Utken, Roberts, Ryder, Rogers & Neighbours, Indianapolis, Ind., Timothy E. Baker, Devoss, Scott, Johnson & Baker, Decatur, Ind., for defendants.

ORDER

LEE, District Judge.

This matter is presently before the court on the March 7, 1983, Motion for Summary Judgment by defendants, Robert Burman and American Republic Insurance Company (hereinafter defendants), and the *pro se* [1] plaintiff's Linda M. Dixon (hereinafter plaintiff), responses [2] to same. During a pre-trial conference, conducted in open court on May 10, 1983, the court addressed specific questions to both plaintiff and defendants concerning critical issues which had been identified by the court in its review of the aforementioned submissions, but which remained unresolved. It is from the parties' answers to such direct questioning and the court's analysis of the entire record before it that the court has determined that there exists no question of material fact as to plaintiff's employment status and that defendants are entitled to judgment as a matter of law. Accordingly, it is appropriate that summary judgment be entered in favor of defendants and against plaintiff. The limited facts relevant to that result and the court's basis for that conclusion are set forth below.

*Facts*

In January of 1981, while soliciting further applicants for the position of agent, defendants caused an advertisement to be published in the Marion, Indiana, Chronicle Tribune. That help-wanted ad invited applications for a career with management opportunities, while also promising, *inter alia*, complete training, financial help during training, and outstanding free fringe benefits.[3]

Plaintiff responded to that ad, interviewed for the position, and was subsequently enrolled by defendants in a two-week class designed to prepare such applicants for the Indiana State Insurance Exam. Plaintiff took that examination on February 14, 1981. She passed the accident and health portions, but failed the life insurance portion. On March 29, 1981, plaintiff successfully completed the remaining life insurance section. She was then hired by defendants as an agent on April 16, 1981, executing the standard "agent's contract" and addenda thereto that same date.[4]

Plaintiff began, next, a four-week training program on April 20, 1981. Her first week consisted of classroom instruction, while the remaining three weeks were devoted to supervised field training. Pursuant to an addendum to the "agent's contract", defendants advanced plaintiff $500 during the course of that training. This money was characterized as a loan under that addendum with the unpaid balance of any money so loaned to be charged to the agent's account in the thirteenth month

1. Attorney Josef D. Musser was appointed to represent plaintiff on July 19, 1982, pursuant to an appointment order which provided: "if, after counsel makes a thorough investigation of the facts of this case and the law applicable thereto, appointed counsel determines that plaintiff's claim is wholly lacking in merit, counsel may file a report with this court and a motion to withdraw as counsel." Attorney Musser filed such a report and motion to withdraw on January 6, 1983. Thereafter, on January 10, 1983, plaintiff wrote the court of her intention to represent herself in the event of Mr. Musser's withdrawal. Subsequent to its review of said report, the court granted appointed counsel's motion, while also scheduling a preliminary

pre-trial conference on February 10, 1983, to explain the responsibilities of *pro se* representation to plaintiff. Following that explanation, plaintiff was permitted to so proceed.

2. Plaintiff filed responses to the Motion for Summary Judgment on March 8, 1983; May 13, 1983; May 26, 1983; June 2, 1983; June 7, 1983; July 6, 1983; and July 27, 1983, respectively.

3. See plaintiff's March 8, 1983, Exhibit IV.

4. The addenda includes a life insurance addendum, a loan addendum, and a lead system addendum.

following the date the contract was executed.[5]

Little more than one week after the conclusion of the training program, on May 25, 1981, defendants terminated their agency relationship with plaintiff for alleged non-production. Plaintiff, having complied with the procedural prerequisites and being in receipt of a right to sue letter, thereafter filed a timely, *pro se* complaint alleging that defendants wrongfully discharged her because of her race, color, sex, and national origin. Defendants subsequently challenged the maintenance of that Title VII action by submitting the Motion for Summary Judgment presently under review. The basis asserted for that challenge being that plaintiff was not an "employee" of defendants within the meaning and protection of the Act. Accordingly, defendants argue that as an independent contractor plaintiff does not have a remedy for her termination under Title VII.

## *Discussion*

### I

■ Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment serves as a vehicle with which the court "can determine whether further exploration of the facts is necessary." *Habin v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).

In making this determination, the court has kept in mind that the entry of summary judgment will terminate this litigation, and has, as a consequence, drawn all inferences from the established or asserted facts in favor of plaintiff, the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Wilson v. Health & Hospital Corp. of Marion County*, 620 F.2d 1201, 1215 (7th Cir.1980). Where, as here, the non-moving party is proceeding *pro se*[6], the court has been even more cautious for the pleadings, by definition, are drafted by a non-lawyer. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Accordingly, the court has held these pleadings to a far less stringent standard than that normally utilized to examine submissions drafted by an attorney. Under this liberal pleading standard, plaintiff's allegations, however inartfully pleaded, are deemed sufficient to call for the opportunity to offer supporting evidence, and her *pro se* complaint will not be dismissed, "unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which will entitle [her] to relief." *Haines, supra* at 519–520, 92 S.Ct. at 595, *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court, having recalled the liberality afforded plaintiff's *pro se* pleadings, now turns to address defendant's Motion for Summary Judgment.

### II

■ Title VII was enacted to eliminate discrimination *in employment* based on race, color, religion, or national origin. *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 (9th Cir.1980).[7] Consequently, for Title VII protections to apply, there must be proof that an employment relationship existed at the time of the claimed wrong.[8] *Jenkins v. Travelers Insurance*

---

5. The loan addendum provided that the unpaid balance of such money loaned would be charged to the agent's account in the thirteenth month following the date the contract was executed. Plaintiff, of course, never reached the thirteenth month of her contract; nor has she repaid the loan. Defendants have since written off the loan as uncollectible and have also written to advise plaintiff of the tax consequences of such debt relieved.

6. See note 1, *supra*.

7. See H.R.Rep. No. 914, 88th Cong., 2d Sess., reprinted in 1964 U.S.Code Cong. & Ad.News, pp. 2355, 2391, and 2401.

8. The court notes that while there must be some connection with an employment relationship for Title VII protections to apply, *Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883

*Co.*, 436 F.Supp. 950, 952 (D.Or.1977), *Smith v. Dutra Trucking Co.*, 410 F.Supp. 513, 518 (N.D.Cal.1976), aff'd mem., 580 F.2d 1054 (9th Cir.1978). Relying on the language of the "agent's contract" and the terms of plaintiff's prior affiliation, defendants' Motion for Summary Judgment argues that plaintiff cannot demonstrate the existence of such an employment relationship. To the contrary, defendant's submission asserts that plaintiff's activities as an agent were those of an independent contractor and thus not within the scope of Title VII coverage. *See Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 338 (11th Cir.1982) (independent contractor not protected by Title VII); *Unger v. Consolidated Foods Corp.*, 657 F.2d 909, 915 n. 8 (7th Cir.1981) (independent contractor not within scope of Title VII); *Spirides v. Reinhardt*, 613 F.2d 826, 829 (D.C.Cir.1979) ([federal] employees who are independent contractors or those not directly employed are unprotected by Title VII). It is, therefore, to the terms and conditions of plaintiff's former affiliation that the court now directs its attention.

### III

Examining first the plain language of the "agent's contract", the court observes that the agreement purports to limit coverage to the "agent's activities as an independent contractor." (Defendant's exhibit one at 1.)[9] The court does not find that contract designation to be a binding determination of plaintiff's employment status for the purpose of this Title VII litigation, however, as the court will not elevate an employment contract so as to permit it to be used to waive protections granted plaintiff under this or any other act of Congress. *Spirides*, 613 F.2d at 832;

*accord, McClure v. Salvation Army*, 460 F.2d 553, 557 (5th Cir.1972); *Mathis v. Standard Brands Chemical Industries, Inc.*, 10 Empl.Prac.Dec. 5245, 5246 (N.D. Ga.1975). Nor does the court find the balance of that document to provide persuasive authority as to plaintiff's former employment status, inasmuch as it does not further define the relationship between the parties, other than to indicate that compensation would be paid on a commission basis and that the affiliation could be terminated by either party at any time. Rather, the court considers the "agent's contract" and its "independent contractor" designation to be at best only an indication of the parties' intentions, not a controlling reference to plaintiff's Title VII status. *Mueller v. Cities Service Oil Co.*, 339 F.2d 303, 305 (7th Cir.1965).

In the present matter, however, the decisive issue to be determined is not whether the parties intended plaintiff to be an "independent contractor", but whether she may in any respect be deemed to have been an "employee" within the scope of Title VII's protection. *Spirides*, 613 F.2d at 831. Unfortunately, resort to the statute will not provide that answer either, as Title VII broadly defines "employee" to mean "an individual employed by an employer." 42 U.S.C. § 2000e(f). Therefore, to resolve whether plaintiff's agent affiliation was one of employee-employer, the court must look beyond the "contract" and the Act itself to focus upon the realities of that actual relationship and the degree of control defendants exercised over plaintiff. *Unger*, 657 F.2d at 915 n. 8.[10]

### IV

Anticipating this burden of proof, defendant Burman has submitted an affidavit

---

(9th Cir.1980); that need not necessarily be direct. *Gomez v. Alexian Brothers Hospital of San Jose*, 698 F.2d 1019, 1021 (9th Cir.1983); *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338, 1340–41 (D.C.Cir.1973).

9. The agent's contract provides in pertinent part that:

This contract between American Republic Insurance Company and the undersigned agent

covers the agent's activities as an independent contractor in the sale of the company's policies.

10. Unger also made it clear that in the Seventh Circuit such analysis "should keep in mind that remedial nature of Title VII and construe it liberally so as to further the goals and purposes of eliminating discrimination in employment."

detailing the usual terms and conditions of an agent's affiliation. That submission provides that agents are free to have any other employment provided only that it does not involve the sale of competing insurance; that agents are not assigned an area, but are free to solicit anywhere in Indiana; that they establish their own hours and schedules; and that agents need not report their daily activities to defendants. In addition, the affidavit further provides that agents do not receive any sick leave, vacation, or retirement benefits; that agents are not reimbursed for travel or other business expenses such as lodging, meals, mileage, or fuel consumed in the pursuit of insurance sales; that no unemployment or workers compensation was paid; that no federal or state income taxes are withheld from commissions; that no social security tax is paid or withheld; and that all earnings are reported on 1099 forms as opposed to the standard W–2 forms utilized for traditional employees.[11] Thus, asserting that the same terms and conditions governed their relationship with plaintiff, defendants contend that it is established beyond any doubt that they did not exercise sufficient control over plaintiff's activities to permit her to be characterized as an employee under the Act. Rather, based upon the absence of such authority to direct the means and manner of plaintiff's activities, defendants argue that plaintiff's affiliation was that of an independent contract.

Clearly, defendants' position is supported by the greater weight of authority. *See Cobb v. Sun Papers, Inc.,* 673 F.2d 337 (11th Cir.1982); *Unger v. Consolidated Foods Corp.,* 657 F.2d 909 (7th Cir.1981); *Lutcher v. Musicians Union Local 47,* 633 F.2d 880 (9th Cir.1980); *Smith v. Dutra Trucking Co.,* 410 F.Supp. 513 (N.D.Cal. 1976) *aff'd without op.,* 580 F.2d 1054 (9th Cir.1978); (cases previously cited.). More specifically, the court finds the analysis provided in *Jenkins v. Travelers Insurance Co.,* 436 F.Supp. 950 (D.Or.1977) and

*Brown v. American Family Life Assurance Co.,* 29 Empl.Proc.Dec. 32,893 (C.D. Cal.1982) to be particularly instructive as those decisions considered the very question presently before the court: whether an insurance agent's discharge was actionable under Title VII.

In the first case, Jenkins, a black male, applied to enroll in the defendant's career agent accelerated program and was accepted as a trainee. As a trainee he received no salary or wages. His only earned compensation came from commissions on insurance placed with the defendant. Jenkins was told that he was considered to be self-employed and that he had to file the appropriate reports required by the Social Security Act. No taxes were withheld from his commissions and he paid taxes due from a self-employed person on the appropriate tax form. Jenkins did receive some assistance and training, but he worked virtually without supervision as he did not have to report his daily activities. Jenkins' contract left him free, however, to solicit whatever insurance applications his license permitted and he could sell any type of insurance to whomever he wished.

To provide the trainees with sustenance, the company advanced interest-free weekly loans based on the trainee's projected income need. Jenkins' contract provided for such loans and stated that he was liable to repay the advances. Additionally, Jenkins signed promissory notes for each advance and he treated the money so received as loans by not reporting same as income on his tax returns.

Based upon the foregoing, the court found that the insurance company lacked the right to control or direct Jenkins' activities. 436 F.Supp. at 952. The court therefore concluded that "in classical terms, Jenkins was a self-employed independent contractor" and held that he was not entitled to recover on his claim for impermissible

11. See plaintiff's March 8, 1983, Exhibit III (photo copy of 1982 Nonemployment Compensation Form 1099 detailing $30.24 commission paid).

discrimination in employment since he was "not a Title VII employee." *Id.*[12]

In the other insurance case, *Brown v. American Family Life Assurance Co.,* an insurance sales state manager was also found to be an independent contractor outside the scope of Title VII's protection. 29 Empl.Prac.Dec. 32,893. Therein plaintiff, a white male, alleged that the company had discriminated against him in his discharge.[13] The facts demonstrate that plaintiff did not have to report his regular activities to the company, that he was free to make his own schedule, and that he worked whatever hours or days he desired. His compensation was based solely on commissions, renewals, overrides, application bonuses, and an occasional prize. He did not receive any of the benefits provided the company's traditional employees, such as sick leave, vacation pay, or a retirement plan, for example. Nor were contributions made by the company for social security, as no taxes were withheld. Moreover, the company reported plaintiff's income on 1099 forms as opposed to W-2 forms which were utilized for its traditional employees. Plaintiff's relationship was covered by a written contract which was terminable by either party upon thirty (30) days notice. That contract permitted plaintiff to be free, however, to solicit for and sell non-competing insurance as it claimed to be a non-exclusive agreement.

Based on the preceding, that court concluded that plaintiff was an independent contractor and not a protected "employee" within the meaning of Title VII. *Id.* Therefore, the company's motion for summary judgment was granted.

Drawing upon the foregoing, defendants contend that the facts presently before the court lead to the same inescapable conclusion as that reached in *Jenkins, supra,* and *Brown, supra:* that plaintiff was not an "employee" within the meaning of Title VII. (Motion for Summary Judgment at 11). Principally those facts are said to include: contractual recognition of plaintiff's status as an independent contractor; payment solely on a commission basis; no holidays, vacations, sick days, or similar type payment for time not worked; a non-exclusive relationship which was terminable at will by either party and which allowed plaintiff to have other non-competing employment; the ability of plaintiff to make her own schedule and work how and when she determined; that no taxes were withheld from commissions and that earnings were reported on 1099 forms rather than on W-2 forms; that there was a complete absence of supervision as to when or how plaintiff performed her duties; and, that plaintiff paid her own travel and business expenses. *Id.* Accordingly, defendants seek the same result, the entry of summary judgment.

V

The court, in its review of the economic realities of plaintiff's work relationship, found defendants' authority to be highly persuasive and the facts substantially similar to those which proved to be determinative in *Jenkins, supra,* and *Brown, supra.* Nevertheless, the court remained troubled by two other considerations. First, that the *pro se* plaintiff should be afforded a viable opportunity to rebut defendants' factual presentation. Second, that defendant had not explained their offer of "outstanding free fringe benefits" that had appeared in the newspaper ad to which plaintiff responded initially. The court's reluctance to grant summary judgment vanished, however, during the May 10, 1983, pre-trial conference following plaintiff's responses to the court's specific questions relating to those same concerns.

---

**12.** *Jenkins* does not identify the actual conduct challenged, nor does the opinion discuss the length of the agent's affiliation. 436 F.Supp. at 953.

**13.** Plaintiff executed a written agent's contract on May 23, 1972, when he was first hired. Although the facts provide that he was promoted to state manager on April 1, 1975, the date of his discharge is not discussed.

At that pre-trial conference the court permitted plaintiff the opportunity to state her case fully. Yet, in the face of the court's direct inquiries, she affirmed the accuracy of defendants' presentation of the economic realities of her prior relationship, rather than seeking to refute such claims. Moreover, she unequivocally stated that she understood the ad's promise of "outstanding free fringe benefits" to represent nothing more than the money formerly advanced to her during the four-week training program. Plaintiff further stated that, if anything, she did not receive enough supervision,[14] and, other than being required to attend a meeting each Monday morning to be paid commissions earned the preceeding week, she was completely free to set her own schedule.

Rather than contest the economic realities of her prior relationship, plaintiff continued to challenge only defendants' motivation for her dismissal.[15] Specifically, plaintiff's case rests upon her sincere belief that her performance was acceptable, or would have been acceptable in the near future—if only she had been given a fair, nondiscriminatory chance. Plaintiff further asserts that she was doing her job well enough to rule out the possibility that she was dismissed because she was nonproductive. She therefore contends that defendants' stated reason for her dismissal was merely pretextual.

## VI

■ Even though the court accepts plaintiff's theory as true for present purposes, that same theory does not raise issues of material fact that may bear on a determination of her employment status. To the contrary, the court finds that defendants' preceeding presentation of the economic realities, taken together with plaintiff's unambiguous affirmation of those same economic realities, establishes beyond any doubt that plaintiff's affiliation was that of an independent contractor. Defendants did not exercise control over the details of plaintiff's work, they simply agreed to pay a commission for accomplished results. This is not, however, sufficient to bring plaintiff under the protection of Title VII. *Brown*, 29 Empl.Proc.Dec. at 32,893; *Jenkins*, 436 F.Supp. at 952. Therefore, even when reading the complaint and all subsequent submissions in a light most favorable to plaintiff,[16] the court finds that plaintiff was not an "employee" within the scope of Title VII. *See Cobb*, 673 F.2d at 338; *Unger*, 657 F.2d at 915 n. 8; *Spirides*, 613 F.2d at 829; *Dutra Trucking*, 410 F.Supp. at 518.

### Conclusion

In the complete absence of any countering evidence regarding the economic realities of plaintiff's prior work relationships, the court finds that there are no facts before the court to indicate that plaintiff was an "employee" within the meaning of

14. In particular, plaintiff complained that defendants had failed to properly instruct her in the use of the "Lead System." Apparently plaintiff believed that her performance was limited in large part by her restricted understanding of that important sales tool.

15. The court notes that its March 7, 1983, order provided the following admonishment:

The defendants in this lawsuit have filed a Motion for Summary Judgment against you which is supported by an accompanying affidavit. Under Rule 56 of the Federal Rules of Civil Procedure you have a right to respond to that motion by filing your own affidavit(s). Although the mere filing of affidavits will not guarantee the denial of defendants' pending motion, your response will enable the Court to more meaningfully consider your complaint. If you do not respond to the motion with your own affidavit(s) to dispute the facts established by the defendants, a summary judgment may be entered against you if, on the basis of the facts established by the defendants, the defendants are entitled to judgment as a matter of law. Unless you respond to the motion with sworn statements which contradict important facts claimed by defendants in their sworn statements, the Court will accept the defendants' uncontested version of the facts as true. More importantly, you will lose this lawsuit if the Court determines that under those unchallenged facts, the defendants are entitled to judgment under the law. You are provided twenty (20) days from the date you receive this notice in which to respond to the motion for summary judgment.

16. See note 10, *supra*.

Title VII.[17] Consequently, the court finds that defendants have met their burden of demonstrating that there exists no genuine issue of material fact as to plaintiff's former status as an independent contractor. Moreover, in accordance with Rule 56, Fed. R.Civ.P., the court finds that those material facts as claimed by defendants are true. The court holds, therefore, that based upon these facts the controlling federal law is with the defendants, that plaintiff does not have a remedy under the Act, and that defendants are entitled to judgment as a matter of law. The foregoing constitutes the court's findings of fact and conclusions of law.

Accordingly, it is ORDERED that the Motion for Summary Judgment by Robert Burman and American Republic Insurance Company be, and hereby is, GRANTED; each party to bear their own costs.

**17.** The court notes that because plaintiff was proceeding *pro se* the court took care to fully inform her of the importance of submitting such contradictory evidence on two occasions. First, through the court's order of March 7, 1983 (see note 15, *supra*), and, second, through the court's specific instruction in that regard as provided during the May 10, 1983, pre-trial conference.