Patricia KNIGHT, Plaintiff,

v.

UNITED FARM BUREAU MUTUAL IN-SURANCE COMPANY and United Farm Bureau Family Life Insurance Company, Defendants.

No. S89–199.

United States District Court, N.D. Indiana, South Bend Division.

July 24, 1990.

---

## MEMORANDUM AND ORDER

MILLER, District Judge.

Patricia Knight works as an insurance sales agent for the defendants, United Farm Bureau Mutual Insurance Company and United Farm Bureau Family Life Insurance Company (collectively referred to as "Farm Bureau"); her status with Farm Bureau is at issue in this case. Ms. Knight brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that Farm Bureau discriminated against her on the basis of her sex. Trial was had to the court on June 28 and 29, 1990. This memorandum is intended to satisfy the court's obligations under Fed.R.Civ.P. 52(a).

Ms. Knight contends that Farm Bureau discriminated against her in four ways. First, she maintains that Farm Bureau provided her with secretarial services inferior to those provided to male agents. Second, she contends that in late 1987 and early 1988, Farm Bureau threatened to terminate her due to failure to achieve stated sales goals, but did not threaten termination of similarly situated male agents. Third, she maintains that while Farm Bureau regularly sent monthly progress reports to the spouses of male agents, Farm Bureau refused to send such reports to Ms. Knight's husband. Finally, she contends that a premium due to her was awarded to a male agent.

Farm Bureau denies each of these allegations of discrimination and further contends that Ms. Knight is not an employee and hence falls outside the protection of Title VII. Instead, Farm Bureau argues that she is an independent contractor. Both sides sought summary judgment on the issue of her status, but the court found that application of the standards concerning summary judgment required resolution at trial. For the reasons that follow, the court concludes that Ms. Knight is not an employee of Farm Bureau for purposes of Title VII. Accordingly, the court directs entry of judgment for Farm Bureau.

Jere Humphrey, Plymouth, Ind., for plaintiff.

Donald S. Smith, Ryan L. Leitch, Indianapolis, Ind., for defendants.

## I.

Farm Bureau is in the business of selling insurance. Ms. Knight began work for Farm Bureau in May, 1982 as an "employee agent" in Farm Bureau's Plymouth, Indiana office. During all relevant periods, except for times of vacancies, Farm Bureau's Plymouth office (which was one of three offices servicing Marshall, Starke, and Fulton Counties) was manned by five sales agents, agency manager William Baumgardner, two adjusters, and a secretarial staff. All sales agents begin as "employee agents"; after a period of time, they become "contract" agents by executing an agreement which, by its terms, defines the agent as an independent contractor for Farm Bureau. Agents are given no option as to whether they wish to sign the "independent contractor" agreement.

Farm Bureau furnishes its "contract" agents with camera, film, office furniture, telephone, file cabinets, rate books, forms, secretarial services, postage, and computer terminals connected to Farm Bureau's home office. The agents themselves furnish their cars, pens, and business cards.

The "independent contractor" agreement restricted Plymouth office agents to three Indiana counties. Mr. Baumgardner, in his role as agency manager, further restricted the agents' areas by geography within Marshall County. Ms. Knight, for example, was assigned Centre Township, while other agents were assigned other townships. Customers who walked into the Plymouth office were assigned to agents by geographic area unless they sought only auto insurance or stated that they were referred to a specific agent. Agents could sell in other counties only for very good reasons, such as referrals or the presence of family members who wanted Farm Bureau insurance. Ms. Knight has sold insurance to relatives and long-time friends in Elkhart County who pursued her or were referred to her. Contract agents were not permitted to sell insurance other than that provided by Farm Bureau and its subsidiaries.

Farm Bureau provided education to all its agents, whether "employee" or "contract". Farm Bureau pays tuition, provides lunch money, and (for seminars held at Purdue University) rooms when "contract" agents attend the educational programs.

Employee agents are expected to be in the office from 8:00 a.m. to 5:00 p.m. daily. Contract agents were required to be in the office two half days a week and, until the Plymouth office recently ceased its Saturday morning hours, every fifth Saturday morning. Agents rotated the Saturday assignments among themselves; in the event of conflicts, agents would swap Saturday duties among themselves. Mr. Baumgardner's permission was not required for those schedule modifications. In addition, agents were expected to be in the office each day to receive mail and messages. Finally, all agents are to attend hour-long Monday morning meetings held either weekly or bi-weekly, although Mr. Baumgardner testified unconvincingly that such attendance is pursuant to invitations that agents are free to decline (agent Gary Madlem, however, testified that he had not been reprimanded when he missed Monday meetings).

Contract agents are paid commissions and bonuses; accordingly, they may be paid even if they do not work on a given day, although renewal commissions are not received after an agent leaves Farm Bureau's employ. Employee agents are not eligible for proficiency bonuses or travel bonuses. If a policy is cancelled, contract agents may be required to repay commissions already paid. They receive no paid holidays, sick days, or vacations. Most of the time, the contract agents are free to come and go as they please. A contract agent continues to be paid if another agent "sells something into" his or her account. For a time, agents were required to keep time records, but the unpopularity of those efforts led the requirement to lapse. No agent (including Ms. Knight) was disciplined (although Kip Cook was reprimanded) for ceasing the maintenance of time records.

Contract agents do not have social security taxes withheld from their pay; Farm

Bureau provides them with 1099 forms and they pay their own taxes. Contract agents pay for their own health, disability, and life insurance, while such insurance is provided to all employee agents. Farm Bureau provides no workers' compensation or unemployment compensation coverage for their contract agents. Agents such as Ms. Knight receive no reimbursement for travel, gifts, advertising, supplies, state licensing fees or (after the initial set is exhausted) business cards. Contract agents are allowed to use Farm Bureau stationery, but must purchase their own stationery if they desire their names on it.

Ms. Knight testified that while Mr. Baumgardner occasionally recommends policies for her to discuss with a customer, that decision is up to her ninety-nine percent of the time. Mr. Baumgardner testified that he routinely accompanies employee agents on sales calls.

When disputes arose between contract agents, Mr. Baumgardner resolved them; his decision was treated as final.

## II.

■ Title VII protects the employment relationship; consequently, Ms. Knight must demonstrate the existence of an employment relationship to prevail on her Title VII claim. *Dixon v. Burman*, 593 F.Supp. 6, 8 (N.D.Ind.1983). That Ms. Knight's agreement with Farm Bureau identifies her as an independent contractor is significant, but not controlling. *Spirides v. Reinhardt*, 613 F.2d 826, 832 (D.C.Cir. 1979); *accord, Unger v. Consolidated Foods Corp.*, 657 F.2d 909, 916 n. 8 (7th Cir.1981), *vacated on other grounds* 456 U.S. 1002, 102 S.Ct. 2288, 73 L.Ed.2d 1297 (1982), *on remand*, 693 F.2d 703 (7th Cir.), *cert. denied*, 460 U.S. 1102, 103 S.Ct. 1801, 76 L.Ed.2d 366 (1982).

As was noted in the order denying the summary judgment motions, most courts have utilized the "economic realities" test in determining whether a Title VII claimant is an employee or an independent contractor. *Wheeler v. Hurdman*, 825 F.2d 257 (10th Cir.1987), *cert. denied*, 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1988); *Mares*

*v. Marsh*, 777 F.2d 1066 (5th Cir.1985); *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 981 (4th Cir.1983); *Cobb v. Sun Papers*, 673 F.2d 337 (11th Cir.), *cert. denied*, 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982); *Spirides v. Reinhardt*, 613 F.2d 826, 831–832 (D.C.Cir.1979). That inquiry focuses on (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations. *Tadros v. Coleman*, 717 F.Supp. 996 (S.D.N.Y. 1989); *E.E.O.C. v. Pettegrove*, 716 F.Supp. 1430 (S.D.Fla.1989); *Perry v. Country Club Hills*, 607 F.Supp. 771 (E.D.Mo.1983).

### A.

■ Of the factors listed above, the employer's right to control is the most important. *Broussard v. Bossier, Inc.*, 789 F.2d 1158 (5th Cir.1986); *Perry v. Country Club Hills*, 607 F.Supp. at 773; *Helenkamp v. The Kingsley Ass'n*, 682 F.Supp. 813, 815 (W.D.Pa.1988).

Farm Bureau exercises some control and supervision over "contract" agents such as Ms. Knight. A contract agent faces geographic restriction on her sales area. A "contract" agent largely sets his or her own hours, but must be in the office two half days a week. For most of Ms. Knight's time with Farm Bureau, attendance every fifth Saturday morning was required, although agents were afforded flexibility in swapping Saturdays. Attendance at regular Monday morning meetings was strongly recommended. On the other hand, apart from this regulation of nine hours of her weekly time, Ms. Knight is free to select the time and manner of her contacts with potential customers, as well as the products to discuss with them. The required hours appear to relate to a need to have an agent in the office, not to the

performance of the agents' sales work. Although some effort appears to have been made to get contract agents to record their time, Farm Bureau cannot be said to have required such reports.

■ This factor does not weigh unambiguously in favor of either employee or independent contractor status. A purported employer's control over the claimant need not be total for the claimant to be found to be an employee. *Carter v. Duchess Community College*, 735 F.2d 8, 12 (2nd Cir. 1984). Nevertheless, the factor of control weighs more heavily in favor of a finding that Ms. Knight is an independent contractor:

1. Like the independent contractor in *Hickey v. Arkla Industries, Inc.*, 699 F.2d 748 (5th Cir.1983), Ms. Knight was subject to no control concerning which customers she could call upon in her geographic area, was not required to report about her daily activities, but had to attend sales meetings and was subject to periodic evaluations.

2. Like the independent contractor in *Garrett v. Phillips Mills, Inc.*, 721 F.2d at 982, Ms. Knight was not required to account for her daily activities, was free to choose her own working hours, and was essentially unsupervised as to her method of selling.[1]

3. Like the independent contractors in *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32 (3rd Cir.1983), Ms. Knight basically set her own working hours, days, and vacations without accountability to Farm Bureau.

4. Like the independent contractor in *Dixon v. Burman*, 593 F.Supp. at 11, Ms. Knight received no paid vacations, sick days, or holidays, but was required to attend weekly Monday morning meetings.

5. Like the independent contractor in *Cobb v. Sun Papers, Inc.*, 673 F.2d 337 (11th Cir.), *cert. denied*, 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982), Ms. Knight received some direction as to the work to be done, but was neither given exact hours within which to perform it nor told the details by which it was to be accomplished.

Certainly, flexible hours do not alone make a Title VII claimant an independent contractor, *see Doty v. Elias*, 733 F.2d 720, 723 (10th Cir.1984) (restaurant workers), but that flexibility and lack of Farm Bureau control over the details of performance of the work favor a finding of independent contractor status.

### B.

The kind of occupation and nature of skill required weighs in favor of independent contractor status, but only barely so. Ms. Knight's skills are developed through a combination of her work experience and training provided by Farm Bureau. Specialized skills are required for her work. *Cf. Doty v. Elias*, 733 F.2d at 723 (FLSA case). She is not free to sell products other than those of Farm Bureau, but that factor is not determinative. Her duties of selling insurance relate to integral part of Farm Bureau's business. *See Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376 (3d Cir.), *cert. denied*, 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985).

Although Ms. Knight depends on Farm Bureau for her livelihood because she can sell no other products as long as she works for Farm Bureau, she is free to leave at any time and sell in the same area for other insurers, rendering her situation different from a doctor with a limited number of hospitals at which to practice. *Cf. Doe v. St. Joseph's Hospital of Fort Wayne*, 788 F.2d 411 (7th Cir.1986). Accordingly, while there is a degree of economic control that must be considered, that control does not rise to such a level as to be entitled to significant weight.

### C.

Responsibility for the costs of operation favors a finding of employee status. Unlike the party to the independent contract

---

**1.** Unlike the independent contractor in *Garrett*, however, Ms. Knight is not free to sell other insurers' products. This factor is not, however, determinative of a claimant's status. *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32 (3rd Cir.1983).

in *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, Farm Bureau provides office space, secretarial support, and all necessary supplies save automobiles, pens, and business cards.[2] Farm Bureau also provides some educational programs to its contract agents and underwrites the costs of those programs. On the other hand, contract agents are not reimbursed for business travel, licensing fees, advertising, personal stationery, or other business expenses. Like the independent contractor in *Dixon v. Burman*, 593 F.Supp. at 11, Ms. Knight paid her own travel and business expenses.

### D.

The method and form of payment weigh strongly in favor of independent contractor status. Although the record does not disclose how Ms. Knight reported the nature of the income of her tax returns, it is undisputed that she, like all contract agents, received 1099 forms from Farm Bureau. Taxes were not withheld from her pay. Unlike employee agents, she was to pay for her own insurance. Workers' compensation and unemployment compensation coverage was not provided to her. Courts frequently have cited such arrangements in support of a finding of independent contractor status. *Mares v. Marsh*, 777 F.2d 1066, 1068; *Garrett v. Phillips Mills, Inc.*, 721 F.2d 979, 982 (ADEA case); *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32 (ADEA case); *Hickey v. Arkla Industries, Inc.*, 699 F.2d 748; *Cobb v. Sun Papers, Inc.*, 673 F.2d 337; *Dixon v. Burman*, 593 F.Supp. at 11; *compare Unger v. Consolidated Foods Corp.*, 657 F.2d 909, 916 n. 8 (taxes withheld, claimant found to be employee).

Ms. Knight received no salary; her entire compensation consisted of commissions and incentive bonuses. Such an arrangement was noted among the factors supporting a finding of independent contractor status in *Hickey v. Arkla Industries, Inc.*,

699 F.2d 748.[3] Ms. Knight receives commissions regardless of whether she worked when the commission was paid; indeed, she would continue to receive commissions (aside from renewal commissions) even after departure from Farm Bureau.

From an accounting standpoint, Ms. Knight was treated wholly as an independent contractor. Here, as in *Garrett v. Phillips Mills, Inc.*, 721 F.2d at 982, the parties' performance under the agreement indicates that "independent contractor status was not merely a creation of the formal document, but that the status was recognized in the actual working relationship."

### E.

The final factor to be considered is the length of commitment and/or expectations. Ms. Knight's agreement with Farm Bureau is indefinite; it can be cancelled by either party on thirty days notice. The independent contractors in *E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, and *Hickey v. Arkla Industries, Inc.*, 699 F.2d 748, had similar contractual provisions.

### III.

At trial, Ms. Knight produced substantial evidence of sexual harassment consisting of an employer-created hostile or abusive working environment. *See generally Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *King v. Board of Regents of University of Wisconsin System*, 898 F.2d 533 (7th Cir.1990). In order to prevail under Title VII, however, she must also show that she was the defendant's employee. In light of the facts discussed above, particularly Farm Bureau's minimal control over Ms. Knight, and the method and manner of her compensation, the court concludes that Ms. Knight's relationship to Farm Bureau was and is that of an independent contractor, not that of an employee. Accordingly,

---

**2.** In *Hickey v. Arkla Industries, Inc.*, 699 F.2d 748 (5th Cir.1983), the independent contractor was provided with office space and secretarial services without charge, but was required to pay the costs of remodeling and redecorating of office space.

**3.** In *Hickey*, however, the manufacturer's sales representative voluntarily chose his independent contractor status. Ms. Knight, like all Farm Bureau contract agents, chose between "contract agent" status or leaving Farm Bureau.

she is not protected by Title VII, and Farm Bureau is entitled to judgment on the Title VII claim.

Judgment shall be entered for the defendant on the plaintiff's complaint.

SO ORDERED.