Patricia KNIGHT, Plaintiff–Appellant,

v.

UNITED FARM BUREAU MUTUAL IN-SURANCE COMPANY and United Farm Bureau Family Life Insurance Company, Defendants–Appellees.

No. 90–2770.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 1, 1991.

Decided Dec. 3, 1991.

Jere L. Humphrey (argued), Kizer & Neu, Plymouth, Ind., for plaintiff-appellant.

Donald S. Smith (argued), Laura S. Reed, Ryan L. Leitch, Riley, Bennett & Egloff, Indianapolis, Ind., for defendants-appellees.

Before CUDAHY, RIPPLE, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Patricia Knight, an insurance agent working for the defendant United Farm Bureau Mutual Insurance Company filed suit claiming that the defendant discriminated against her on the basis of her sex in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* Following a two-day bench trial, the district court found that Farm Bureau was entitled to judgment as a matter of law because Ms. Knight was not an employee of the defendant, but an independent contractor. Therefore, her claim fell outside the protection of Title VII. This timely appeal followed.

### I. FACTS

In May, 1982, Ms. Knight began working at Farm Bureau's Plymouth, Indiana, office as an "employee agent." An employee agent is paid a salary from which social security and income taxes were withheld by Farm Bureau. After a certain period of time in which the agent has satisfactorily performed, employee agents become "contract agents." The agents are not given the option to remain employee agents. If they wish to continue selling Farm Bureau insurance as contract agents they must sign a written agreement which states that the agents are now independent contractors. The contract agents earn their income through commissions on their sales and various performance bonuses. These agents are required to pay their own taxes and receive a 1099 tax form from Farm Bureau for this purpose.

Farm Bureau provides certain services to its contract agents. Farm Bureau provides, without charge, cameras, film, office furniture, file cabinets, rate books, forms, secretarial services, postage, computer terminals, and some Farm Bureau stationery. In addition, Farm Bureau paid for all agents' education. The company pays tuition, provides a lunch stipend, and pays for room rental when agents attend various seminars or programs. The contract agents, however, provide their own pens, transportation, personalized stationery and business cards. The contract agents pay their own licensing fees and provide their own health, disability and life insurance. The agents do not receive paid holidays, sick days or vacations.

Farm Bureau retains some control over its contract agents. First, while working at Farm Bureau, the agents are not allowed to sell insurance for any other company. The contract agreement also provides that Plymouth agents can sell the insurance in only three Indiana counties. This area was further divided by the agency manager who assigned certain townships to different agents. Agents could only sell outside of their assigned geographic boundaries for "good reasons," such as referrals or a sale to a relative. Disputes between agents are settled by the agency manager. In addition, Farm Bureau requires its contract agents to be in the Plymouth office two half days each week and every fifth Saturday. Agents are expected to attend hour-long meetings on Monday mornings and to retrieve mail and messages from the office each day.

The agency affords very little supervision over the work of the contract agents. The agents find their own customers and decide which Farm Bureau products to offer. The agents also work a great deal at home, so they can work in the evening hours when clients and potential customers are home from work.

All of the above factors were considered by the district court. On appeal, Ms. Knight points to other evidence in the record which she claims is relevant to the determination of whether she was an independent contractor or an employee. First, she notes that all contract agents were evaluated by the agency manager, William Baumgartner. Part of the evaluation rates the agent's ability to communicate through the proper channels, acknowledging the chain of command. Knight contends that the existence of a chain of command inferentially establishes an employer/employee relationship. Ms. Knight also notes that the agents received a four page document entitled "Responsibility and Performance Standards" which she and two other contract agents believed were rules of conduct that they were required to follow.[1] All agents who testified referred to Mr. Baumgartner as their boss.

## II. THE DECISION OF THE DISTRICT COURT

Although finding substantial evidence of sexual harassment, the district court determined that Knight was an independent contractor, not an employee. *Knight v. United Farm Bureau Mut. Ins. Co.*, 742 F.Supp. 518 (N.D.Ind.1990). In reaching this conclusion, the court correctly recognized the use of the "economic realities" test which involves the application of the general principles of agency to the facts. Of several factors to be considered, the employer's right to control is the most important when determining whether an individual is an employee or an independent contractor. *See Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1160 (5th Cir.1986); *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C.Cir.1979). In applying this test, the district court focused on five factors:

(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form

1. Ms. Knight was one of five contract agents working at the Plymouth office.

of payment and benefits, and (5) length of job commitment and/or expectations. *Knight,* 742 F.Supp. at 521 (citing *Tadros v. Coleman,* 717 F.Supp. 996 (S.D.N.Y.1989); *E.E.O.C. v. Pettegrove,* 716 F.Supp. 1430, (S.D.Fla.1989); *Perry v. Country Club Hills,* 607 F.Supp. 771 (E.D.Mo.1983)).[2]

Upon balancing these factors, the district court concluded that Ms. Knight is an independent contractor. In reference to the "control" factor, the court recognized that Farm Bureau exercised some control over the agents. The court, however, found that because Knight maintained a great deal of freedom in choosing her working hours, finding potential customers and choosing the insurance products to sell, Ms. Knight's status was closer to that of an independent contractor. As to the kind of occupation and the skills required, the court noted that Farm Bureau trains its agents, that the agents are not allowed to sell products for anyone but Farm Bureau, and that agents are integral to Farm Bureau's business. However, because Ms. Knight was free to leave Farm Bureau at any time and use her skills to work for other insurance companies, the court concluded that this "economic control," common to this type of occupation, is not entitled to significant weight. Neither party contests the district court's finding that Farm Bureau's assumption of costs for the operation of the business favors a finding of employee status. Nor do the parties contest the court's finding that the commission-based pay, from which Farm Bureau did not withhold tax, supports a finding that Knight was an independent contractor. Ms. Knight only contends that the district court placed too much weight on this latter

fact. In evaluating the fifth factor, the length of the job commitment and/or expectations, the court found that either party could terminate the agreement upon giving 30 days notice which, the district court held, supported a finding that Ms. Knight was an independent contractor. The district court concluded:

> In light of the facts discussed above, particularly Farm Bureau's minimal control over Ms. Knight, and the method and manner of her compensation, the court concludes that Ms. Knight's relationship to Farm Bureau is that of an independent contractor, not that of an employee.

*Id.* at 523.

## III. ANALYSIS

### A. Standard of Review

The district court's legal conclusion that Ms. Knight is an independent contractor depended on its factual determinations concerning control, the nature of the occupation, the costs of operation, the form of payment and benefits, and job commitment or expectations. Thus, the district court's conclusion involved an application of the law to the facts. Generally, "[i]f the trial judge correctly states the law, then his findings as to whether the facts meet the legal standard will be disturbed only if they are clearly erroneous." *Daniels v. Essex Group, Inc.,* 937 F.2d 1264, 1269 (7th Cir. 1991). The review, however, "would be more searching if the district court has committed an error of law, including one that 'infect[s] a so-called mixed finding of fact, or a finding of fact that is predicated on a misunderstanding of the governing rule of law.'" *Id.* at 1269–70 (quoting *Bose Corp. v. Consumers Union,* 466 U.S. 485, 500, 104 S.Ct. 1949, 1959, 80 L.Ed.2d 502 (1984)).

---

**2.** Other courts have identified eleven factors, in addition to the control factor, for the "economic realities" analysis. These factors are:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or

by the job; (6) the manner in which the work relationship is terminated; *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties. *Broussard,* 789 F.2d at 1160; *Spirides,* 613 F.2d at 832. The district court's five step inquiry adequately covers all the factors identified by other courts.

## B.  Employee or Independent Contractor

Knight must prove the existence of an employment relationship in order to maintain a Title VII action against Farm Bureau.  Independent contractors are not protected by Title VII.  *Dixon v. Burman,* 593 F.Supp. 6, 8 (N.D.Ind.1983), *aff'd without opinion,* 742 F.2d 1459 (7th Cir.1984).  Title VII defines employee very broadly: "The term 'employee' means an individual employed by an employer...." 42 U.S.C. § 2000e(f).  "In determining whether a business relationship is one of employee-employer, courts look to the 'economic realities' of the relationship and the degree of control the employer exercises over the alleged employee." *See Unger v. Consolidated Foods Corp.,* 657 F.2d 909, 915–16, n. 8 (7th Cir.1981) (citing *Spirides v. Reinhardt,* 613 F.2d 826, 831–32 (D.C.Cir.1979)).

On appeal Ms. Knight does not challenge the test used by the district court.  Instead, she contends that the district court failed to properly evaluate the nature of insurance sales and, therefore, misapplied the "control" factor in its analysis.  Ms. Knight also argues that the district court failed to properly evaluate and weigh the "integral-economic-relationship" between Farm Bureau and its agents.  The appellant further complains that the district court did not discuss certain evidence in the record demonstrating Farm Bureau's control over its agents, such as the agent evaluations and the rules and regulations promulgated by Farm Bureau.  In essence, Ms. Knight challenges the court's factual findings and the weight assigned to the findings.  Ms. Knight concludes that the district court erred in determining that she was an independent contractor, thus not protected by Title VII.

Ms. Knight argues that the district court erroneously evaluated the "control" factor due to its basic misunderstanding of the nature of insurance sales.  Knight notes that insurance agents work hours must be flexible because the prime insurance selling hours are in the evening when clients and potential customers are home from work.  Thus, she argues that the district court erred by giving weight to the fact that agents dictate their own hours and work under little supervision.

In support of this proposition, Knight cites *Donovan v. DialAmerica Marketing, Inc.,* 757 F.2d 1376 (3rd Cir.1985).  The workers in *DialAmerica* where home-researchers who were employed to find telephone numbers of individuals whose name and address were provided.  This suit was brought under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, alleging that DialAmerica failed to comply with the minimum wage and record keeping provisions of the act.  The Third Circuit determined that the lack of supervision was not dispositive because little supervision is inherent in a work-at-home job.  This case does not help Knight.  First, as the defendants correctly point out, the definition of "employee" is given a broader interpretation under the FLSA than under Title VII. *See E.E.O.C. v. Zippo Mfg. Co.,* 713 F.2d 32, 37–38 (3rd Cir.1983); *Cobb v. Sun Papers, Inc.,* 673 F.2d 337, 340 (11th Cir. 1982).  The Third Circuit analyzed all the factors necessary to determine whether or not the company controlled the homeworkers.  The court concluded that the home-researchers were not self-employed because the company defined the scope of the work, fixed piece rates for payment, and could fire the homeworkers for substandard work or failure to follow regulations.

The district court did not, as Knight argues, rest its decision solely on the basis that Knight set her own hours and worked at home.  Instead, the court looked at the several different factors, including Knight's ability to choose her own method to sell the products and her discretion to decide which Farm Bureau products to offer potential customers.  Even though Farm Bureau trained Ms. Knight, it was her application of those skills that mattered.  The court also considered the fact that Ms. Knight was compensated by commission.  Pay by commission implicitly depends on the agents' ability to sell which, in turn, depends on the methods used by Ms. Knight.  It was the lack of control over the manner and means by which she sold insurance, which was not controlled by Farm Bureau, that determined her income.

Knight also argues that the district court failed to fully consider the integral-economic-relationship existing between Farm Bureau and its agents. Financial interdependence is a factor that should be considered when determining whether an individual is an employee or independent contractor. *See N.L.R.B. v. O'Hare–Midway Limousine Service*, 924 F.2d 692, 695 (7th Cir.1991). The district court did note that the agents' sales are integral to Farm Bureau's business. Again, however, the court did not find this factor to be conclusive. Although Knight and Farm Bureau did have an integral-economic-relationship, profits to both Farm Bureau and the agent depended on the agents' ability to sell insurance.

It is not clear why the district court did not mention the other evidence (the evaluations and the performance standards) suggesting that Farm Bureau retained a good measure of control over the agents. It is clear, however, that the district court considered the weight of the evidence, as a whole, to support a finding that Farm Bureau lacked the requisite control over Ms. Knight's work for her to be considered an employee for Title VII purposes. Perhaps if our review were *de novo*, we would agree that Ms. Knight was an employee. However, our review is not *de novo*, and we are not to re-weigh the factual findings of the district court. Because the district court's underlying factual findings are not clearly erroneous and the court did not predicate its finding "on a misunderstanding of the governing rule of law," the decision of the district court is

AFFIRMED.